[Crim. No. 5274. First Dist., Div. One. Feb. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MILTON EMERSON WINCHELL, Defendant and Appellant.

David W. Brown, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Edward P. O'Brien, Deputy Attorney General, for Plaintiff and Respondent.

SIMS, J.—Defendant Winchell has appealed from a judgment in which he was convicted of possession by an ex-felon of a firearm capable of being concealed upon the person in violation of the provisions of section 12021 of the Penal Code, and was sentenced to state prison.

Defendant's sole contention on appeal is that his prosecution and punishment for this offense were barred, under the provisions of section 654[1] of the Penal Code, because of his prior conviction of, and sentence for, possession of burglar's tools in violation of the provisions of section 466 of that code.

The facts giving rise to the foregoing charges are as follows:

On April 8, 1965 at approximately 3 a.m., Officer George Celillo was on patrol near the intersection of Silvan and Green Avenues in the City of San Bruno. He heard a noise, and upon investigation noticed the brake lights from a parked vehicle going on and off. The officer left his patrol car and

---

[1]Pen. Code, § 654, insofar as is pertinent provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

approached the vehicle. He observed three men in the car, all of whom were lying down. The officer returned to his car to call for assistance. At this time one of the men left the car and started to walk away. Officer Celillo called to him and ordered him to return. When asked for identification, the man produced an out-of-state driver's license which identified him as James Sadowski. The officer then called for a record check on Sadowski; while waiting for the results Celillo walked to the rear of Newell's Lounge near which the vehicle was parked. He noticed the door had been gouged and the wood torn in the vicinity of the lock. Celillo returned to the parked vehicle, arrested the three men, and searched the car. He observed a wrecking bar and a small blue bar on the floor of the back seat. By this time another officer had arrived; this officer noticed a .22 calibre automatic pistol, subsequently determined to be loaded, on the rear floor underneath the front seat. (Evidence at the preliminary examination showed that this pistol was stolen.)

The defendants were taken to the San Bruno jail for booking. At this time, while Winchell was being searched, a loaded .38 calibre revolver was found in a holster underneath his left arm.

The following day four complaints were filed in the municipal court. In action No. 25648 the three men were named as defendants and jointly charged with the felonies of attempted burglary (Pen. Code, §§ 459 and 664) and possession of stolen property, the .22 calibre pistol. (Pen. Code, § 496.) In action No. 25649, Winchell was charged with the felony of which he was ultimately convicted—possession by an ex-felon of a firearm, the .38 calibre revolver, capable of being concealed upon the person (Pen. Code, § 12021),[2] and the felony of an ex-felon carrying a concealed weapon, the .38 calibre revolver, without a license (Pen. Code., § 12025). In action No. 25650 the three men were jointly charged with possession of bur-

---

[2]Pen. Code, § 12021 provided: ''Any person who is not a citizen of the United States and any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or county, or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both.'' (By Stats. 1965, ch. 931, § 1, p. 2545, the maximum punishment was increased from five to fifteen years.)

glary tools in violation of Penal Code, section 466,[3] a misdemeanor. In action No. 25651 his codefendants were charged with the misdemeanor of carrying a concealed weapon without a license (Pen. Code, § 12025).

The full record of the municipal court proceedings is not before this court. The transcript of the preliminary hearing on the charges contained in the two felony complaints reflects that all of the defendants were held to answer on April 15, 1965, and ordered to appear for arraignment in the superior court on April 22d.

The same record reflects that defendants had previously entered pleas of not guilty to the charges contained in the two misdemeanor complaints, and that the actions had been consolidated and set for jury trial on April 21st in the municipal court. Immediately following the preliminary hearing, Winchell and defendant Mayer, each withdrew his plea of not guilty and entered a plea of guilty to the charge of possession of burglary tools. The defendants both waived any delay in time for arraignment for judgment, and Winchell's counsel expressly requested that he be sentenced immediately or as soon as possible. The judge indicated that the matter should be referred to the probation department for investigation and report so that the case would "be coordinated," presumably, with the other charges. The matter was set for May 4th for report despite this defendant's plea that it be deferred no longer than two weeks.

On April 20th an information, which included all the charges set forth in the first two complaints, was filed in the superior court. On April 22d the defendants Winchell and Mayer were arraigned and at the request of each of those defendants the matter was continued to May 6th for plea.

On that date each defendant requested and secured a further continuance of one week. Winchell's attorney disclosed that the continuance was requested because the proceedings in

---

[3]Pen. Code, § 466 provided, and provides: "Every person having upon him or in his possession a picklock, crow, keybit, or other instrument or tool with intent feloniously to break or enter into any building, or who shall knowingly make or alter, or shall attempt to make or alter, any key or other instrument above named so that the same will fit or open the lock of a building, without being requested so to do by some person having the right to open the same, or who shall make, alter, or repair any instrument or thing, knowing or having reason to believe that it is intended to be used in committing a misdemeanor or felony, is guilty of misdemeanor. Any of the structures mentioned in section four hundred and fifty-nine of this code shall be deemed to be a building within the meaning of this section."

the municipal court had not terminated on May 4th as anticipated. The deputy district attorney predicated a controversy over the effect of the conviction and sentence on the misdemeanor charge, and stated that he was in a dilemma as to what to do about it.[4]

On May 13th, in the superior court, Winchell made and filed his written "Motion to Dismiss Under Penal Code § 654 and In Bar of Further Prosecution," supported by his declaration which reflects the entry of his plea of guilty to violation of Penal Code section 466, possession of burglary tools, a misdemeanor, and his sentence therefor to serve time in the county jail. He further alleged: "The possession of the burglary tools was a part of the transaction or course of conduct leading up to the filing of the charges now before the Court." A similar motion and declaration was made and filed for co-defendant Mayer. (Meanwhile, the case had been set for trial on June 14th as to the third defendant on his plea of not guilty.)

Argument on the motion was set for May 20th, and held on that day, and on May 26th. During these proceedings it was brought out that the charge in the municipal court specified no particular object or objects which were the subject of other charges, but was couched in the language of the first clause of section 466 (see fn. 3, *supra*).

The defendants also brought out that, at the original arraignment, the prosecutor had admitted that the misdemeanor concealed weapons charge against Mayer and Sadowski did "arise out of the same incident" as the charge of possession of burglary tools; and that subsequently, at Winchell's arraignment on the felony complaint involving the concealed weapons charges, the prosecutor similarly acknowledged that the other felony charges—attempted burglary and possession of stolen property—were "the same transaction" and "part of one incident" with the former.

The court denied the motions under section 654 of the

---

[4]In response to the court's inquiry as to whether the People objected to the continuance, the attorney stated: "Well, I do object but at the same time, I don't believe that I really have any legal basis for an objection, Your Honor. I know that I can see what is coming. The defendants pleaded guilty to a possession of burglary tools charged, a misdemeanor, in Municipal Court alleged to have been committed at the same time and place as the alleged attempted burglary set forth in the information before this Court, and I can see a fight coming into this, *People* versus *Manago* [230 Cal. App. 2d 645 (41 Cal.Rptr. 260), see text, *infra*] case regarding the lesser barring the greater, but I don't see how to get around it."

Penal Code and motions contemporaneously presented under section 995, but reserved to the defendants the right to enter a plea of prior punishment for determination at the trial. Thereupon defendant Winchell entered his plea of not guilty, not guilty by reason of insanity,[5] and, pursuant to section 654 of the Penal Code, his plea of prior prosecution to each of the four counts with which he was charged. The matter was set for jury trial on June 14th.

At the time set for trial, the defendant, through counsel and personally, expressly waived the right to jury trial, the right to be confronted by witnesses against him, the right to take the stand and testify in his own behalf and to call witnesses on his behalf, and agreed that the issue of guilt or innocence on the count (count III) charging him with violation of section 12021 of the Penal Code be submitted to the court on the evidence produced at the preliminary hearing as evidenced by the transcript thereof.

In return the prosecution dismissed the charges of attempted burglary (count I), receiving stolen property (count II), and carrying a concealed weapon without a license (count IV). (Counts I and II, which were the only felony counts against Mayer, were also dismissed as to him.) The parties further stipulated "that the offense set forth in count III being submitted to the Court, is an offense alleged to be part of the same act or course of conduct as alleged in counts I, II and IV of the information."

The transcript of the preliminary hearing was received in evidence and the matter was continued one week for decision. At that time the matter was submitted. The court found that the possession of burglary tools was independent from the charge of possession of a gun by an ex-felon, overruled the defendant's special plea, and found him guilty as charged. Thereafter, defendant's motion for probation was denied and the court rendered the judgment from which he has appealed.

Disposition of several collateral matters will serve to place the issues of this case in their proper perspective. The dismissal of the charges of attempted burglary, possession of stolen property, and carrying a concealed weapon without a license renders it unnecessary to determine the effect that the convic-

---

[5] Alienists (now, Stats. 1965, ch. 1962, § 1, p. 4490, psychiatrists) appointed pursuant to the provisions of § 1027 of the Pen. Code reported that defendant was sane at the time of the commission of the offenses in question, and this plea was subsequently withdrawn.

tion of, and sentence on, the misdemeanor had on these charges.[6]

▌ Furthermore, it is clear that neither the offense proscribed by section 466, nor that proscribed by section 12021 is necessarily included within the other, either as defined in the statutes, or as found in the pleadings in this case. The words "other instrument or tool" as found in section 466 (see fn. 3, *supra*) and as referred to in the pleading, are qualified by the reference to "picklock," "crow," and "keybit" which precede them. (Civ. Code, § 3534; *In re Marquez* (1935) 3 Cal.2d 625, 629 [45 P.3d 342].) Although a weapon may be found to be an instrument in the possession of a burglar, it is not the type of instrument contemplated by the provisions of section 466. A violation of section 466 can be committed without violating section 12021 and a violation of section 12021 can be committed without violating section 466. Therefore, the prosecution of the felony offense was not barred by the constitutional and statutory provisions against double jeopardy. (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 825, fn. 2 [48 Cal.Rptr. 366, 409 P.2d 206]; and see *People* v. *Tideman* (1962) 57 Cal.2d 574, 583-584 [21 Cal.Rptr. 207, 370 P.2d 1007]; and *Neal* v. *State of California* (1960) 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839].)

▌ The criteria for the application of the prohibitions against multiple punishment and multiple prosecution which are contained in section 654 of the Penal Code (see fn. 1, *supra*) have often been enunciated by the courts of this state. With respect to multiple punishment the rule is stated as follows: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; accord: *In re Johnson* (1966) 65 Cal.2d 393, 395 [54 Cal.Rptr. 873, 420 P.2d 393]; *In re Ponce* (1966) 65 Cal.2d 341-343 [54 Cal.Rptr. 752, 420 P.2d 224]; *In re Henry* (1966) 65 Cal.2d 330, 331-332 [54 Cal.Rptr.

---

[6] The trial judge suggested that the sentence for possession of burglar's tools would bar the prosecution for attempted burglary under the facts of this case. The validity of this conclusion, under circumstances similar to this case, may depend on whether multiple punishment for the respective offenses would be barred. (See *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 828 [48 Cal.Rptr. 366, 409 P.2d 206], and text of opinion, *infra*.)

633, 420 P.2d 97]; *In re Romano* (1966) 64 Cal.2d 826, 828 and 829 [51 Cal.Rptr. 910, 415 P.2d 798]; *People* v. *Failla* (1966) 64 Cal.2d 560, 570 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Ridley* (1965) 63 Cal.2d 671, 677-678 [47 Cal. Rptr. 796, 408 P.2d 124]; *People* v. *McFarland* (1962) 58 Cal.2d 748, 760-763 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Nelson* (1965) 233 Cal.App.2d 440, 445-446 [43 Cal.Rptr. 626]; *People* v. *Alvarado* (1965) 231 Cal.App.2d 789, 794-795 [42 Cal.Rptr. 310]; *People* v. *Keller* (1963) 212 Cal.App.2d 210, 220-222 [27 Cal.Rptr. 805].)

On the other hand, where there are several victims of related criminal acts, or where the conduct is divisible, multiple punishment may be imposed. (*People* v. *Ford* (1966) 65 Cal.2d 41, 48-49 [52 Cal.Rptr. 228, 416 P.2d 132]; *In re Romano, supra,* 64 Cal.2d 826, 828; *People* v. *Failla, supra,* 64 Cal.2d 560, 571; *People* v. *Ridley, supra,* 63 Cal.2d 671, 678; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 20-21; *People* v. *Slobodion* (1948) 31 Cal.2d 555, 561-562 [191 P.2d 1]; *People* v. *Wasley* (1966) 245 Cal.App.2d 383, 386-387 [53 Cal.Rptr. 877]; *People* v. *Hernandez* (1966) 242 Cal.App.2d 351, 359-362 [51 Cal.Rptr. 385]; *People* v. *Hudgins* (1965) 236 Cal.App.2d 578, 587-588 [46 Cal.Rptr. 199]; *People* v. *Houghton* (1963) 212 Cal.App.2d 864, 872-874 [28 Cal.Rptr. 351]; *People* v. *Moore* (1956) 143 Cal.App.2d 333, 340-342 [299 P.2d 691]; and *People* v. *Israel* (1949) 91 Cal.App.2d 773, 779 [206 P.2d 62]; and see *People* v. *Tideman, supra,* 57 Cal.2d 574, 584-587; *Seiterle* v. *Superior Court* (1962) 57 Cal. 2d 397, 400 [20 Cal.Rptr. 1, 369 P.2d 697]; *People* v. *Jackson* (1959) 53 Cal.2d 89, 93 [346 P.2d 389]; and *People* v. *Greer* (1947) 30 Cal.2d 589, 603-604 [184 P.2d 512].)

In the *Neal* case, *supra,* the opinion referred to the question of multiple prosecution as follows: "Since petitioner was tried for both crimes at the same time we do not decide whether section 654 requires all of the prosecutions to be brought at the same time. Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (55 Cal.2d at p. 21.)

In *Seiterle* v. *Superior Court, supra,* 57 Cal.2d 397, it was contended that an affirmed conviction and sentence for kidnaping for purposes of robbery with bodily harm precluded re-

trial of the issue of the penalty for a murder. The majority opinion found that the offenses were not necessarily incident to one objective, and that, since they were separate and not indivisible, the prosecution of one would not preclude prosecution for the other (57 Cal.2d at pp. 400-403).

In *People* v. *Tideman, supra,* 57 Cal.2d 574, when confronted with a similar situation—a conviction on one of several counts urged as a bar to further prosecution of another count—the court ruled: "In a single criminal action (pleading any number of counts), no plea of guilty to, or order of dismissal or acquittal of, any separately pleaded offenses, included or otherwise, will bar the progress of that prosecution as to the other counts. The prosecution on such other counts may continue until each, on its own merits, has been severally and finally disposed of by bringing the defendant to conviction and sentence or to acquittal." (57 Cal.2d at p. 583.) The application of the provisions of section 654 to multiple prosecution in one action was defined as follows: "Thus it is established that section 654 prohibits multiple *punishments* for a single act, but like the jeopardy doctrine, has no application to multiple *convictions* as such, *in a single prosecution.* It *does* by its carefully chosen language, extend its reach to prohibit *subsequent* prosecution [fn. omitted] 'for the same act or omission,' and this, of course, would encompass a lesser offense necessarily included in such 'act or omission.' In this application the effect of section 654 would resemble the protection of the jeopardy doctrine but with this important difference: Section 654 becomes available only after there has been 'an acquittal or conviction and sentence.' The shield of 654 *does not follow from mere jeopardy.* The conjunction of 'conviction and sentence' makes altogether clear the legislative intention that punishment (the irrevocable pronouncement of sentence; see *People* v. *Thomas* (1959) 52 Cal.2d 521 [342 P.2d 889]) or acquittal, not mere jeopardy, is the essential requirement for operation of this section." (*Id.,* at pp. 586-587.)

The question of the rules to be applied where there were separate prosecutions involving the same course of conduct was faced squarely in *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822. There the court granted a writ of prohibition to prevent a trial for violation of section 12021 (see *supra,* fn. 2) after the defendant had been convicted on his plea of guilty to exhibiting a firearm in a threatening manner, a misdemeanor, in violation of Penal Code, section 417. Chief Justice

Traynor elaborated on his presageful words in *Neal,* as follows: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence. [Fn. omitted.]" (63 Cal.2d at p. 827.)

*Kellett* also establishes that the provisions of section 954 of the Penal Code confer jurisdiction of a misdemeanor offense on the superior court where such an offense otherwise satisfies the test of joinder and can therefore be joined, with a felony offense over which the superior court has jurisdiction (*id.,* at p. 826, particularly fn. 3).

It has generally been held that the provisions of sections 5 and 11 of article VI of the Constitution (prior to its 1966 amendment, cf. §§ 5 and 10 as amended), and sections 1425 and 1465 of the Penal Code divest the superior court of jurisdiction over misdemeanors of which an inferior court within the county has jurisdiction. (*In re Williamson* (1954) 43 Cal. 2d 651, 655 [276 P.2d 593]; *People* v. *Mulholland* (1940) 16 Cal.2d 62, 64-68 [104 P.2d 1045]; *In re Application of Luna* (1927) 201 Cal. 405, 412 [257 P. 76]; *People* v. *Smith* (1964) 231 Cal.App.2d 140, 142 [41 Cal.Rptr. 661]; *In re Joiner* (1960) 180 Cal.App.2d 250, 254-255 [4 Cal.Rptr. 667]; and see *People* v. *Jones* (1964) 228 Cal.App.2d 74, 82 [39 Cal. Rptr. 302].) In *People* v. *Bundte* (1948) 87 Cal.App.2d 735 [197 P.2d 823], which is cited in *Kellett,* the general language regarding joinder of a felony and a misdemeanor was qualified by the fact that the offense in question was a so-called "high" or "indictable" misdemeanor which was triable in the superior court in any event because the inferior court did not have jurisdiction. (87 Cal.App.2d at p. 745; and see *People* v. *Wilson* (1964) 224 Cal.App.2d 738, 740-741 [37 Cal.

Rptr. 42], disapproved on other grounds in *Kellett*, see *infra.*)

It has been thought that where a misdemeanor was not an included offense it would have to be separately prosecuted even though it was connected in its commission with a felony, because the superior court did not have jurisdiction over the misdemeanor. (*People* v. *Rodriquez* (1962) 202 Cal.App.2d 191, 196-197 [20 Cal.Rptr. 556] (expressly overruled by *Kellett, supra*); and see *People* v. *Herbert* (1936) 6 Cal.2d 541, 547 [58 P.2d 909]; *People* v. *Gomez* (1964) 229 Cal.App.2d 781, 784 [40 Cal.Rptr. 616]; *People* v. *Ayala* (1959) 167 Cal. App.2d 49, 53 [334 P.2d 61]; Justice Whelan, dissenting in *People* v. *Morris* (1965) 237 Cal.App.2d 773, 777, at p. 786 [47 Cal.Rptr. 253]; *People* v. *Kennedy* (1955) 133 Cal.App. 2d 693, 694 [284 P.2d 898]; and Comment, 10 U.C.L.A. L.Rev. 870, 871, fn. 6 and 906, fn. 215.) The American Law Institute, Proposed Official Draft of the Model Penal Code (May 4, 1962) conditions its limitation on separate trials for multiple offenses as follows: "if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial *and are within the jurisdiction of a single court.*" (§ 1.07, subd. (2); italics added.)

▓ With the hindsight of *Kellett* it is apparent that the prosecutor erred in failing to lodge all of the charges against defendant in one complaint and ask for a single indictment for all charges in the superior court. The situation facing the prosecutor was further complicated by the fact that there were several defendants involved, and all were not chargeable with the same offenses.[7] However, there was no attempt in this case to harass the defendants with successive prosecutions. All of the charges were lodged with the magistrate at the same time. They were apparently split into separate complaints on the erroneous theory that the felony and misdemeanor matters should be prosecuted in different courts.[8] Those offenses which could be tried against multiple defendants were properly joined.

---

[7]Some of the problems attendant to prosecuting for multiple offenses have been noted by the courts and commentators. (See *Kellett* v. *Superior Court, supra*, 63 Cal.2d 822, 828; *People* v. *Krupa* (1944) 64 Cal.App.2d 592, 603-605 [149 P.2d 416]; and Schneider, *Penal Code, Section 654: The Prosecutor's Dilemma* (1965) 17 Hastings L.J. 53.)

[8]The municipal court, with the approval of the prosecutor, ordered that if bail were posted on the felony charge for any defendant, he could be released on his own recognizance on the misdemeanor offenses, for so long as the former bail remained posted.

Under these circumstances further inquiry is indicated to determine whether there has been a violation of the spirit, as well as the letter, of the principle established in *Kellett*. That decision itself furnishes a further guideline. The opinion qualifies the mandate quoted above as follows: "We recognize that in many places felonies and misdemeanors are usually prosecuted by different public law offices and that there is a risk that those in charge of misdemeanor prosecutions may proceed without adequately assessing the seriousness of a defendant's conduct or considering whether a felony prosecution should be undertaken. When the responsibility for the prosecution for the higher offense lies with a different public law office there is also the risk that a well advised defendant may plead guilty to a misdemeanor to foreclose a subsequent felony prosecution the misdemeanor prosecutor may be unaware of or may choose to ignore. Cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. In such situations the risk that there may be waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Accordingly, in such cases section 654 does not bar a subsequent felony prosecution except to the extent that such prosecution is barred by that section's preclusion of multiple punishment." (63 Cal.2d at pp. 827-828.)

The instant case does not present the situation of a prosecutor ignorant of the commission of a higher offense, but it does present the situation of a prosecutor apparently proceeding in ignorance of new concepts of jurisdiction. It presents the situation of a well advised defendant pleading guilty to a misdemeanor to foreclose not a subsequent, but a contemporaneous, felony prosecution. Under these circumstances, section 654 should only bar the prosecution of the felony to the same extent that it would bar multiple punishment for the felony and the contemporaneously charged misdemeanor.

There is nothing in other cases proscribing multiple prosecution to preclude this conclusion. In *People* v. *Howell* (1966) 245 Cal.App.2d 787 [54 Cal.Rptr. 92], it was recognized that a conviction for hit-and-run driving in violation of section 20002, subdivision (a) of the Vehicle Code in one jurisdiction, would not prevent prosecution for misdemeanor drunk driving in violation of section 23102, subdivision (a) of

that code in a different jurisdiction although the driving was continuous.

In *People* v. *Breland* (1966) 243 Cal.App.2d 644 [52 Cal. Rptr. 696], the exception in *Kellett* was applied to permit a prosecution for murder when the victim of an assault died after the perpetrator had been convicted and sentenced for battery. *Wyatt* v. *Municipal Court* (1966) 242 Cal.App.2d 845 [51 Cal.Rptr. 862] is of similar tenor, where the first proceeding was for failure to yield the right-of-way to a pedestrian in a crosswalk in violation of section 21950 of the Vehicle Code, and the second prosecution was for involuntary manslaughter following the victim's death some months later. (See also *People* v. *Herbert, supra,* 6 Cal.2d 541.)

*Hampton* v. *Municipal Court* (1966) 242 Cal.App.2d 689 [51 Cal.Rptr. 760], applied the exception in *Kellett* to defeat the defendant's contention that his conviction and sentence for failure to have a driver's license in his possession and exhibit it on request, in violation of section 12951 of the Vehicle Code, precluded prosecution for driving with a revoked license in violation of section 14601 of that code. The court pointed out that with no license he could not be guilty of the former offense, and that his act in pleading guilty to it with knowledge that the graver charges were pending was connivance and collusion which prevented him from relying on the provisions of section 654 of the Penal Code. In *People* v. *Morris, supra,* 237 Cal.App.2d 773, decided before *Kellett,* the majority of the court held that it was error to refuse to set aside a judgment, entered on the defendant's plea of guilty to a charge of driving with a revoked license in violation of section 14601 of the Vehicle Code, which had been filed four days after her conviction for driving while under the influence of intoxicating liquor in violation of section 23102, subdivision (a) of that code, when each offense ''rested upon the defendant's identical act of operating a motor vehicle at a particular time and place.'' Although circumstances disclosed in the dissenting opinion reflect that the exception later enunciated in *Kellett* may have been applicable, it was not established at that time. The majority found harassment, and the Supreme Court denied a hearing on the eve of its decision in *Kellett.*

*People* v. *Manago* (1964) 230 Cal.App.2d 645 [41 Cal.Rptr. 260] held that the prior conviction and sentence on the charged misdemeanor of carrying a weapon concealed upon his person to '' 'hide, lurk, or loiter upon or about the prem-

ises of another,' '' barred subsequent prosecution for a bur
glary charge based upon the same course of conduct, and neces-
sitated reversal of the judgment secured in the latter proceed-
ing. The court applied the *Neal* test as to punishment, and
found the course of conduct which resulted in both offenses
indivisible.

*People* v. *Wilson* (1964) 224 Cal.App.2d 738 [37 Cal.Rptr.
42], permitted a prosecution for resisting arrest in violation
of section 148 of the Penal Code, after an earlier action for
exhibiting a rifle in a threatening manner in violation of sec-
tion 417 of that code had been dismissed for lack of prosecu-
tion after a trial had ended in a hung jury. The court con-
cluded that "the second prosecution is not based upon the
same act within the meaning of section 654 and is not barred
by the provisions of that section" (224 Cal.App.2d at p.
744). To the extent that *Wilson* sanctioned the filing of succes-
sive proceedings and permitted the harassment of defendant,
it is expressly disapproved in *Kellett* (63 Cal.2d at p. 827,
fn. 5).

In none of the cases where the second prosecution was bar-
red was there a bona fide attempt by the prosecutor to pros-
ecute all charges without harassment, or an obvious attempt
by the defendant to use procedural steps to avoid prosecution
for the more serious charge. These facts are controlling here,
and bring the case within the second rule of *Kellett*. ▮ In-
quiry is, therefore, directed to a determination of whether
punishment for violation of section 466 would bar punishment
for violation of section 12021, or vice versa.

This question recently was presented but not resolved in *In
re Henry, supra,* 65 Cal.2d 330. There the defendant was
convicted of attempted armed robbery and of assault with a
deadly weapon on the same person. The People had conceded
that the two offenses were incident to the one objective of
robbery. The court rejected the contention that the record
reflected that there was in fact a second victim of the robbery
because neither in the information, nor at the sentencing, was
mention made of this fact. The sentence for the assault with a
deadly weapon was set aside. A third concurrent sentence for
violation of section 12021 was not considered because the de-
fendant had already served the maximum sentence, prior to
1965 amendment, of five years under that statute (65 Cal.2d
at p. 330, fn. 1).

In *People* v. *Ford, supra,* 65 Cal.2d 41, tacit approval
was given to conviction and sentence for violation of section

12021 together with burglary, robbery, kidnaping, assault with a deadly weapon and murder. The opinion refers to an earlier decision in the same case (*People* v. *Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892]) for the proposition that the violation of the concealable weapon statute was a continuing offense, and was a felony inherently dangerous to human life which would support a conviction of murder in the second degree for a homicide having a causal relationship with that offense (65 Cal.2d at p. 58).

*Kellett, supra,* indicates that if the two charges—violation of section 417 and violation of section 12021—had been joined in a single prosecution it might have been shown that the object of each offense was unrelated, or that the possession of the weapon extended beyond the time he was brandishing it (63 Cal.2d at p. 825). The decision rests upon harassment, and not on the prohibition against multiple punishment.

In *People* v. *Jackson, supra,* 53 Cal.2d 89, the defendant was convicted of violation of section 12021 and of assault with a deadly weapon. The former count was dismissed before sentence, so no multiple punishment question was presented. In upholding the right of the prosecution to charge and secure a conviction for each offense, the opinion relies on *People* v. *Warren* (1940) 16 Cal.2d 103 [104 P.2d 1024] (53 Cal.2d at p. 93). In the *Warren* case, the court upheld a conviction of the possession of concealable weapons despite the fact that the defendant had been acquitted of robbery and, expressly, had been found to have been unarmed at the time of the alleged offenses and at the time of his subsequent arrest. The opinion adopted by the court recites: "It is true, as contended by appellants that it was necessary to prove that they were armed when they robbed the witness Polonsky on the night of December 23, 1938, in order to constitute the crime then committed as robbery in the first degree. On the other hand, it is also true that the offense which is prohibited by section 2 of the Deadly Weapons Act, i.e., possession or control of a firearm by persons who had been previously convicted of crime, was complete before the robbery took place for the reason that without possession of the deadly weapons which were used in the perpetration of the robbery, that crime could not have been consummated. The possession of a deadly weapon, which is calculated to provoke assaults or worse, has been made an offense under the Deadly Weapons Act for the very purpose of preventing personal violence, and it is therefore incorrect to say that because robbery in the first degree may result from

the possession of a firearm in the hands of an ex-convict, that such possession, as a matter of law, becomes so integral a part of the crime of first degree robbery that the conviction or acquittal thereof is a bar to a subsequent prosecution for the crime of possession of such deadly weapon. . . .

" . . . . . . . . . . . .

"In *People* v. *Perry*, 99 Cal.App. 90, at 93 [277 P. 1080], it was held that the crime of carrying a concealed weapon in violation of the Firearms Act (Stats. 1923, p. 695), is separate and distinct from the crime of robbery, and defendant was subject to separate indictment, conviction and punishment for carrying a concealed weapon, irrespective of the result of the robbery prosecution, and notwithstanding that both crimes may have grown out of the same continuous transaction and were committed at the same time.

"It must therefore be concluded that appellants' first and second points have no merit for the reason that the two offenses herein referred to are separate and distinct crimes and the conviction or acquittal of either does not operate as a bar to the subsequent prosecution for the other." (16 Cal.2d at pp. 110-111.)

In addition to *Perry*, as cited above, other Court of Appeal decisions have considered the propriety of punishment for violation of section 12021. In *People* v. *Wasley, supra*, 245 Cal.App.2d 383, the defendant was convicted and sentenced for possession of a sawed-off shotgun in violation of Penal Code section 12020, and for possession of a pistol in violation of section 12021. In answer to the contention that separate punishment was barred by the provisions of section 664, the court stated: "Appellant also argues that he has suffered double punishment for a single act, in violation of the statute (Pen. Code, § 654). But two separate weapons were possessed. The sawed-off shotgun is contraband. Its possession by anyone is a crime (Pen. Code, § 12020). The purpose is to outlaw a class of instruments (e.g., blackjack, sawed-off shotgun, metal knuckles) normally used only for criminal purposes (*People* v. *Mulherin*, 140 Cal.App. 212, 215 [35 P.2d 174]). Section 12021 has an obviously different public purpose. It bars a class of persons (aliens, arrested felons and narcotics addicts) from possession of concealable firearms. Appellant says that possession of the two weapons was a single act. It is difficult to classify possession as an 'act', although acquisition clearly would be. The absence of an act, however, does not dispose of the issue. If possession of the two

weapons were but a single 'course of conduct', the double punishment proscription would apply (*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]). But that turns on whether the course of conduct is divisible, which in turn depends upon the 'intent and objective of the actor.' (*Neal* v. *State of California, supra.*) This record presents no suggestion of any single intent or objective in possession of the two very different weapons. Nor is the case comparable to those in which an entry for the purpose of felony and the felony resulting from that entry could not be separately punished (*People* v. *McFarland,* 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449] ; *People* v. *Gay,* 230 Cal.App.2d 102, 105 [40 Cal.Rptr. 778]).

''Close connection in time of two acts does not alone prevent their separate punishment (*People* v. *Slobodion,* 31 Cal. 2d 555, 561-563 [191 P.2d 1], reaffirmed in *Neal* v. *State of California, supra,* at p. 20). We find no reason for a different rule because the two possessions here were simultaneous.

''The weapons were of distinct types. They were carried in distinct sections of the automobile. Their possession was proscribed by separate statutes, serving distinct public purposes. The fact that they were possessed at the same time by one man does not reduce that possession to a single act or a single course of conduct. Defendant's argument, logically extended, would bar separate punishments for him if he had carried in the same pocket a pistol, a bindle of heroin, and a stolen gem, separately acquired, thus violating three statutes (Pen. Code, § 12021; Health & Saf. Code, § 11500; Pen. Code, § 496). We find no basis for such an extension of the rule.'' (245 Cal. App.2d at pp. 386-387; and see also Justice Whelan dissenting in *People* v. *Morris, supra,* 237 Cal.App.2d 773, 777, at p. 788 and p. 789; *People* v. *Lopez* (1959) 169 Cal.App.2d 344, 350-351 [337 P.2d 570] ; *People* v. *Mandell* (1949) 90 Cal. App.2d 93, 98-99 [202 P.2d 348].)

In *People* v. *Hudgins, supra,* 236 Cal.App.2d 578 multiple punishment was imposed for second degree murder and violation of section 12021. The court declared: ''As previously stated, appellant was sentenced for second degree murder and for violation of the Dangerous Weapons' Control Law, and it is contended that the two sentences were in violation of section 654 of the Penal Code, and the law as declared in *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]. This would be true if the two offenses were committed by one act or in a series of acts having but a single purpose, but such

was not the case. The acts constituting the offenses were separable. Possession of the gun constituted one offense, and this was an act separate and apart from any use that was made of the gun, and would have been a completed offense even if no use had been made of it. Appellant was properly sentenced for both offenses." (236 Cal.App.2d at pp. 587-588; and see *People* v. *Houghton, supra,* 212 Cal.App.2d 864, 874; *People* v. *Moore, supra,* 143 Cal.App.2d 333, 340-342 [questionable as to holding on conspiracy, see *People* v. *Keller* (1963) 212 Cal.App.2d 210, 221 [27 Cal.Rptr. 805] and *In re Romano, supra,* 64 Cal.2d 826, 828-829] ; and *People* v. *Israel, supra,* 91 Cal.App.2d 773, 779.)

From the foregoing it is clear that the defendant committed two independent acts in possessing both burglar's tools and a concealed weapon. He attempts to assert that the object of attempted burglary, of which he has not been convicted, renders the charges indivisible. This contention cannot be sustained in the absence of proof of guilt of that charge.

The prosecutor's statements that the charges arose out of the same incident or transaction, and his stipulation that the possession charge "is an offense alleged to be part of the same act or course of conduct as alleged in" connection with the other felonies do not aid defendant. The test is whether the charged criminal conduct is indivisible or divisible. The other felony charges having been dismissed there is no question of double punishment in relation to them. The remaining question is whether the two acts of possession are divisible even though they arose from the same course of conduct, transaction, or incident.

The question of the value as precedents of those cases which heretofore have permitted prosecution and punishment for violation of section 12021 along with prosecution and punishment for the offense in the perpetration of which the weapon was carried is left for future determination. The circumstances of this case do not require emasculation of the Legislature's intent to provide greater punishment to an armed ex-felon than to another carrying a concealed weapon, in order to protect the former from either harassment or multiple punishment.

The judgment is affirmed.

Molinari, P. J., concurred.