[Crim. No. 804.    Fourth Dist.    July 15, 1949.]

THE PEOPLE, Respondent, v. JAMES MANDELL, Appellant.

Blaine Pettitt and Denver C. Peckinpah for Appellant.

Fred N. Howser, Attorney General, and Kent C. Rogers, Deputy Attorney General, for Respondent.

MUSSELL, J.—Prosecution for illegal transportation and possession of narcotics and for conspiracy.

Defendant was charged with illegal possession and transportation of narcotics and with criminal conspiracy to commit a violation of section 11500 of the Health and Safety Code. The information contained seven counts: the first three charged possession of morphine, opium and cocaine in separate counts, in the next three defendant was charged with unlawful transportation of the same drugs, and in the seventh count, containing the conspiracy charge, two overt acts were alleged, one as possession and transportation of narcotics in Fresno County, and the other, possession and transportation in the county of Solano. The information also contained an allegation that defendant had been previously convicted of a violation of section 266a of the Penal Code.

Defendant admitted the prior conviction, was tried before a jury, found guilty on all seven counts and sentenced to imprisonment in state's prison. The judgments on counts one, two and three were ordered to run consecutively, and the judgments on counts four, five and six were ordered to run concurrently with the judgments on counts one, two and three. The judgment on count seven was ordered to run consecutively with the judgments on counts one, two and three. Defendant appeals from the judgments and from the order denying his motion for new trial.

Defendant and his wife, Laura Mandell, lived in an apartment house in Vallejo, California. During the month of February, 1948, a friend, Roy Hovermale, moved into the apartment with the Mandells and all three were residing there on February 29, 1948. Defendant and his wife owned a Studebaker sedan and on February 29th defendant instructed her to drive to Mendota, California, in the Studebaker, with Roy Hovermale, and to meet defendant at 1 a.m. on March 1st at one of the two or three card rooms in Mendota. Defendant left the apartment at 5 or 6 p.m. on February 29th with Pat Leonard and arrived in Mendota about 11 p.m. and about an hour later he went to see E. B. Lanham who resided in cabin No. 8 in an auto court in Mendota. About February 27th, Lanham had called defendant by telephone asking him to bring some cocaine the next time he came to Mendota. Lanham testified that he had purchased opium from defendant three times during the three weeks preceding March 1, 1948, and when defendant came to cabin No. 8, Lanham asked him if he had the cocaine; that defendant then opened the

door, went out, and when he returned he said, ''I think there is the law out there''; that defendant and Lanham then left and went to a hotel where defendant used the telephone to call a man named Valencia.

An officer testified that he had been ''spotted'' every night for two weeks at the court where Lanham lived ''to catch this 1947 Studebaker''; that between midnight and 1 a. m. on the morning of March 1st, the Studebaker was driven up to cabin No. 8, occupied by Lanham, a known narcotics user, and a man got out and entered the cabin; that he heard Lanham ask the man if he had any cocaine and the answer was ''Yes''; that the cabin door slammed and the Studebaker was driven away to the north. The officer followed in his own car and after the cars had traveled some distance the Studebaker was driven off the road into a driveway, turned around and driven south. The officer then caught up with and stopped it and found that it was being driven by Laura Mandell and that Roy Hovermale was with her. About 150 feet before the Studebaker stopped a cigar box was thrown from it. The box was found to contain bindles of opium, morphine and cocaine valued at approximately $1,500.

On March 1st, a police officer and an inspector of the State Narcotics Bureau went to the Mandell apartment in Vallejo. At that time they found no narcotics, but picked up several photographs of different persons and a telephone list. They found three address books and a General Petroleum credit card to Jimmy Mandell under the garbage can at the apartment, and a mortar and pestle. Later that morning the officers found a red can in the back yard near the fence at the apartment house. This can contained narcotics in bindles which had been marked ''C'' and ''M,'' identical with the markings on the bindles of narcotics found in the cigar box thrown out of the Studebaker in Mendota.

Defendant testified in his own behalf and admitted that he had instructed his wife to drive to Mendota with Hovermale and to meet him there; that he went over to see Lanham because Lanham owed him $50; that he saw the Studebaker, with another car behind it with lights on, ''standing there''; that he saw his wife there but was afraid to go over to see what was wrong because of previous trouble with the police; that he then went to a hotel and called a man named Valencia; that Valencia came with a car and they went to an eating place; that he then drove Valencia's car to Vallejo; that when he arrived at his apartment a police car was parked out in

front and he did not go in; that he procured bail for his wife and was present in the court house during the trial of Roy Hovermale and his wife and was arrested the date that sentences were pronounced against them.

In response to defendant's phone call on March 1st, Valencia picked up defendant and Lanham and drove to Kerman. On the way to Kerman defendant said, ''Laura got caught and I am lucky I didn't get caught.'' Valencia asked defendant if he had anything in Vallejo and defendant replied, ''Yes, but they will never find it.''

Defendant first contends that two inspectors of the State Narcotics Enforcement Division should not have been permitted to testify as they did that the telephone list and the address books found at the Vallejo apartment contained the names and telephone numbers of numerous known users and peddlers of narcotics. Defendant admitted ownership of the telephone list and that he placed most of the names therein himself and that one of the address books belonged to him. Both inspectors testified as experts and as to facts within their knowledge. No prejudicial error resulted from the admission of such testimony. (*People* v. *Ford,* 81 Cal.App. 449, 455 [253 P. 966]; *People* v. *Hinkle,* 64 Cal.App. 375, 378 [221 P. 693]; *People* v. *Newman,* 24 Cal.2d 168, 174 [148 P.2d 4, 152 A.L.R. 365]; *People* v. *Lewis,* 91 Cal.App.2d 346, 350 [204 P.2d 919].)

Defendant next complains that the court erred in admitting into evidence photographs found in the Vallejo apartment. One of these was of Laura Mandell, Eddie Murphy, Jackie Jurisch, Mike De Gallo, a girl with light hair, and others. The second was of Jackie Jurisch, and the third was of defendant and Sam Tringali. A police inspector testified as to the business and occupation of some of the persons in the photographs. One of the inspectors for the State Narcotics Enforcement Division testified that Sam Tringali, shown in the third picture, was a known narcotic user, and another inspector testified that Jackie Jurisch was a known user and peddler of narcotics.

We find no reversible error in the admission of such testimony as we cannot say that it does not tend, logically, naturally, and by reasonable inference to establish facts material to the issue. (*People* v. *Dabb,* 32 Cal.2d 491, 500 [197 P.2d 1].)

Defendant next contends that a mixing bowl and pestle found in his apartment should not have been admitted in evidence. One of the state inspectors testified that narcotics,

especially morphine, are mixed or cut in mixing bowls and sold in diluted form. There was testimony that the narcotics found on defendant's premises in the red can were more concentrated than those found in the cigar box in Fresno County. Defendant admitted ownership of the property and its admission into evidence did not constitute prejudicial error.

Defendant makes no claim that the evidence in the instant case is insufficient to justify the verdict. The evidence of guilt is satisfactory and strong, and if we assume there was some error in the admission of evidence, we are not of the opinion that the errors complained of resulted in a miscarriage of justice. Under such circumstances the judgment should be sustained. (*Carr* v. *Duncan,* 90 Cal.App.2d 282, 285 [202 P.2d 855]; *People* v. *Jordan,* 24 Cal.App.2d 39, 53 [74 P.2d 519].)

Defendant's final point is that the court erred in pronouncing separate judgments on the first six counts against him because all of the offenses charged were based upon a single transaction constituting but one offense, "thereby inflicting double punishment."

This question was decided by this court in *People* v. *Mandell,* 90 Cal.App.2d 93 [202 P.2d 348]. The defendant in the instant case was not tried with his wife and Hovermale, but was arrested when they had been convicted and sentenced. The evidence is quite similar in both cases, with added testimony involving the defendant in the instant case. There was but one cigar box which contained three different types of narcotics shown to have been possessed and transported in Fresno County. The possession was that which was incident to the transportation charged and was a necessary part of the transportation. The possession of narcotics in Solano County is alleged as an overt act in the conspiracy charge but is not pleaded in any of the other counts of the information. We conclude, as we did in the prior case (*People* v. *Mandell, supra*), that the evidence as to possession and transportation of narcotics discloses three punishable offenses, rather than six, and is sufficient to sustain a conviction on three separate charges of possession, or on three separate charges of transportation, but not on six separate offenses.

The judgment is affirmed as to counts one, two and three, and seven of the information, and is reversed as to counts four, five and six. The order denying a new trial is affirmed.

Barnard, P. J., concurred.