[Crim. No. 7551.   Second Dist., Div. Two.   Aug. 30, 1961.]

THE PEOPLE, Respondent, v. BENNIE BLANTON et al., Defendants; DAVID W. JAMES, Appellant.

Harry E. Weiss for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Don G. Kircher, Deputy Attorney General, for Respondent.

FOX, P. J.—The district attorney filed an information charging the defendants with violating section 11500, Health and Safety Code, in that on or about September 29, 1960, they had possession of a narcotic, to wit, heroin. Blanton was acquitted. James was convicted and sentenced to the state prison. He has appealed from the judgment and sentence.

A few days prior to the arrest of appellant, Officer Drees, of the Los Angeles Police Department, Narcotic Division, received information from United States Customs Agent Neil Greppin that two male Negroes, both big men, living at 2657 South Budlong, in Apartment 7, were receiving large quantities of heroin directly from a connection in Mexico. He stated that one of the men was Joe Hays and the other Willie [*sic*] Blanton. Other information, obtained by Sergeant Grennan, included both Blanton's and appellant's names and gave the above address and apartment number. Sergeant Grennan was also told that appellant was being paid $100 a week to watch the stach (heroin) at the apartment. With this information, the officers went to the above address at about 2 p. m. on September 29, 1960. They did not have a warrant for the arrest of either of the named persons nor did they have a search warrant for the premises.

The landlady accompanied the officers to the apartment. She knocked on the door and called for Blanton.[1] The appellant opened the door.[2] Sergeant Burkland identified himself as a police officer and asked appellant his name. He replied, "David James." The sergeant inquired whether they might come in. He said, "Yes." Upon the entry of the officers, Sergeant Burkland told appellant that they were there because of information that "he was sitting on a stach" for Blanton, and asked appellant if he objected to their searching the apartment. Appellant said, "No, go ahead." The officers thereupon conducted a search. In the bathroom, under the sink, Sergeant Burkland found a cellophane package containing 46 white, paper-wrapped bindles, which contained a white powder that proved to be heroin.

It was stipulated that Sergeant Grennan would testify that he had a conversation with appellant in which appellant stated to him, "I have known Bennie, the codefendant Blanton, for about a month.[3] I heard on the street he was a dope peddler and I was suspicious of why he wanted me to stay here, for that reason. When I told you to go ahead and search, after you told me who you were, I didn't know any dope was there. Bennie brought me here this morning at 9 a. m., and told me not to let anyone come in, because he had some stuff in this apartment he did not want anyone to know about, and he told me that he would pay me for staying here when he came back in the afternoon. I have stayed here and watched this apartment for him for about four or five times in the past." Appellant further stated that he lived elsewhere; that he merely stayed there on different occasions for a period of time for Blanton.

Appellant did not take the witness stand.

In seeking a reversal, appellant contends (1) that his consent to search the apartment was not free and voluntary; and (2) that the prosecution failed to prove his knowledge of the existence of narcotics in the apartment.

[1]The apartment was then rented to Blanton, who was reported as being a relative of Hays, the former tenant.
According to Blanton, "the apartment had been Joe Hays' and when he went to jail I just kept the thing for him and paid the rent. I just let this guy Dave [appellant] stay there."
[2]The landlady had no record of him as a tenant.
[3]At the preliminary hearing the sergeant testified that appellant stated he had known Blanton "real good" for about a month. The transcript of the preliminary hearing was before the trial court.

The testimony of the officers is specific that he gave them permission to enter the apartment and to make a search of it.

█ Whether or not appellant's consent was free and voluntary was a question of fact for the trial court. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469].) █ Further, ''[t]he fact that a police officer is the person seeking to search the premises does not, in and of itself, render consent to the entry and search involuntary.'' (*People* v. *Ransome,* 180 Cal.App.2d 140, 146 [4 Cal.Rptr. 347].) █ Implicit in the court's judgment is the finding that appellant freely and voluntarily consented to the search. There is no basis for this court to upset this implied finding.

█ In order to sustain appellant's conviction it was necessary for the People to establish that appellant exercised dominion and control over the drug with knowledge of its presence and narcotic character. (*People* v. *Redrick,* 55 Cal. 2d 282 [10 Cal.Rptr. 823, 359 P.2d 255].) These, of course, were factual issues. █ Appellant had known Benny ''real good'' for about a month; he had heard that Blanton was a dope peddler; Blanton had brought him there at about 9 o'clock that morning and had told him not to let anyone come in because he had some stuff in the apartment that he did not want anyone to know about, and that he would pay him for staying there when he came back that afternoon; also, that he had guarded the apartment for Blanton upon four or five previous occasions. Appellant admitted that his own suspicions were aroused. The fact that Blanton had stuff in the apartment that he did not want others to know about; that he hired appellant to guard it, and instructed him not to let anyone into the apartment, justifies an inference that contraband was involved, and that defendant realized this was the fact. There is, therefore, sufficient support for the trial court's inference that appellant had dominion and control over the contraband at the time the officers found it in the apartment, and had knowledge of its presence and narcotic character. (*People* v. *Redrick, supra.*) The fact that the foregoing evidence might support a contrary finding is not sufficient to entitle the appellant to a reversal. (*People* v. *Gallagher,* 168 Cal.App.2d 417, 422 [336 P.2d 259] and cases there cited.)

Finally, defendant's failure to testify is not without significance. █ The rule in this respect is stated in *People* v. *Ashley,* 42 Cal.2d 246, at page 268 [267 P.2d 271]: ''A defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may

be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3].) ▮ But the failure to testify will not supply a lacuna in the prosecution's proof.''

The judgment (and sentence, which are one and the same (*People* v. *Cruz*, 178 Cal.App.2d 83, 88 [2 Cal.Rptr. 868])) is affirmed.

Ashburn, J., and Herndon, J., concurred.