LILLIE, J.
 

 A jury found defendant guilty of first degree robbery while armed with a dangerous weapon (§ 211, Pen. Code), rape (§ 261, subd. 3. Pen. Code) and kidnaping (§ 207, Pen. Code), a lesser but necessarily included offense, and that the victim was subjected by defendant to bodily harm (defendant had been charged with kidnaping for the purpose of robbery [§ 209, Pen. Code]). Out of four alleged prior convictions he admitted the second (burglary); the other three were found by the court to be not true. Defendant was sentenced to the term prescribed by law for robbery, rape and kidnaping; the terms imposed on the robbery and rape convictions were ordered to run concurrently and both were ordered to run consecutively with the term imposed for kidnaping. He appeals from the judgment.
 

 Around 1:15 p.m. on March 6, 1966, Ruby Purifoy was walking on East 81st Street when she noticed a yellow Oldsmobile turn into an alley; when she got to the alley defendant drove the car back and forth to prevent her from crossing, then got out with a lead pipe and forced her into the car; he was wearing dark green trousers and a gold or yellow sweater; she started to scream but defendant told her to shut up. He drove to 79th Street and McKinley and parked in an alley behind an apartment house; taking a knife out of the pocket of a blue car jacket he forced Ruby into the apartment; she was screaming as she went into the building (a subsequent police search of the apartment revealed that the premises were vacant and had been abandoned). Defendant took her through the kitchen into the bedroom where he pulled down a wall bed and told her to pull off her clothes; she started to scream but defendant told her to shut up “he wanted to have sex” with her; she testified, “I told him. ‘No, I couldn’t because I was on my period. ’ And he said that he wanted to see and I said no. After I told him no he still wanted to see, so he made me pull my pants [capri] down and at that time I had to show him.” When it was apparent that she told the truth he told her to pull up her pants. Then defendant asked her if she had
 
 *582
 
 any money; he went through her purse and took out her money and a cheek for $32, and removed a gold wedding ring from her left hand. He read everything in her purse, then asked where she lived; she gave him a false address and defendant, who had seen her address on the papers in her purse, said,1 ‘ Don’t lie to me. ’ ’
 

 Defendant then forced Ruby out of the apartment, drove down McKinley to 81st Street and, passing a house in front of 831% Bast 81st Street, said, “you live in the back house.” Ruby testified she replied, “ ‘Just let me out here. I can go on from here. You can keep everything you have. Just let me out.’ He said something about identifying him or that I would lmow him and I could identify him.” Holding the knife, defendant demanded the key to her house; he opened the door, went in and pulled the stereo from the wall; Ruby could not get out because he stood between her and the door; finally she told him she had a headache and wanted an aspirin; she went to the bathroom and stayed three or four minutes; when she no longer heard him she thought he had gone and walked into the bedroom. Defendant was standing behind the closet door and grabbed her. Ruby testified, “He said, ‘You probably can identify me.’ I said, ‘Just let me go please. ’ ’ ’ Defendant then beat her, threw her on the bed and choked her until she was unconscious, leaving a mark on her neck. Slides taken at the hospital after a physical examination showed that Ruby had been raped while unconscious.
 

 When Ruby regained consciousness she was lying flat on her back on the bed; she was dizzy fighting and trying to get up. Her hands were tied with a long-sleeved blouse and over her mouth was tied a torn sheet; she was naked except for her shoes and was sore and ached all over. The telephone had been pulled out of the wall. She worked her hands loose, removed the gag, dressed and went to a neighbor’s where she called her mother. On the way back to her house Ruby saw defendant’s car with a flat tire parked in the back; her stereo was in the car and the back seat was over it. At 3 p.m. Officer Scheidecker found Ruby lying on the bed hysterical; she was taken to the hospital in an ambulance. Shortly thereafter defendant was arrested at an upstairs apartment on Bast 83d Street. He was wearing dark green pants and there was a yellow sweater on the dresser which he admitted was his. He was placed in a police vehicle. Ruby had not ridden in the car but after defendant left it Officer Barly found underneath the right rear seat a gold wedding band and a check for $32.
 

 
 *583
 
 Officer Scheidecker had found a key on the floor of Ruby’s house and handed it to a young man who was present; when she returned from the hospital her nephew gave her the key which she gave to Sergeant Williams who went to the police impound garage and put the key in the ignition switch of defendant’s Oldsmobile.
 

 Defendant did not testify but Mallory Washington, whose sister-in-law is defendant’s sister, gave alibi testimony.
 

 Appellant claims reversible error in the imposition of sentence on both the kidnaping and the rape. On the theory that the rape occurred during the commission of the kidnaping and that Ruby was kidnaped for that purpose, he argues that both offenses were incidental to a single objective constituting only one act within the meaning of section 654, Penal Code.
 
 [1]
 

 The real problem is whether defendant’s course of conduct comprised a single transaction or was divisible into separate and distinct acts, kidnaping and rape. This depends on the intent and objective of the actor during his criminal conduct. 11 If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.”
 
 (Neal
 
 v.
 
 State of California,
 
 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)
 

 Appellant’s interpretation of the evidence admits two offenses incident to one objective—rape. He claims that the rape conviction is based on evidence that he forced Ruby into his automobile, drove her to an abandoned apartment where he talked about raping her and then drove her to her residence where he did rape her while she was unconscious: that the robbery conviction is based on evidence that before leaving the apartment he took her money, etc., and at her residence removed the stereo; and that the kidnaping conviction is based upon evidence that he forced her to go to an abandoned apartment and then to her home where the rape was committed.
 

 Viewed in the light most favorable to the judgment
 
 (People
 
 v.
 
 Sweeney,
 
 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), the evidence demonstrates that during the course of defendant’s criminal conduct he committed three separate crimes—the result of divisible acts—and that they were not the product of a single intent. It cannot be denied that initial
 
 *584
 
 ly, in forcibly carrying Ruby to the vacant apartment, defendant transported her with the intent and for the purpose of raping her. He pulled down the bed and told her to pull off her clothes that “he wanted to have sex” with her, but after she convinced him that she “couldn’t” he told her to pull up her pants. It is clear that here he abandoned the intent to rape Ruhy. Then he decided to and did rob her. But instead of releasing her there or on the street, he again forcibly carried her to another location, her home; and as he approached the house she begged him to let her out of the car and keep everything he had taken but “He said something about identifying him or that [she] would know him and [she] could identify him,” then he demanded the key to her house, entered and pulled the stereo from the wall. He did not leave the premises while Ruby was in the bathroom but waited and grabbed her, repeating, “Ton probably can identify me,” then beat her, threw her on the bed, choked her until she was unconscious and tied her hands and mouth. While she was unconscious he raped her.
 

 Defendant was charged with kidnaping for the purpose of robbery (§ 209, Pen. Code) but the jury found him guilty of kidnaping (§ 207, Pen. Code) and that Ruby was subjected to bodily harm; in doing so the jurors must have determined that robbery was not the objective of either forcible transportation, and the evidence fully supports this. While defendant did eventually rape Ruby, it is apparent that whatever intent he formulated in this connection was purely secondary and materialized only after he rendered her unconscious, perhaps thought her dead; and that his primary purpose in taking Ruby home was, if no one was there, to either choke her to death or beat her so that subsequently she would be afraid to identify him. His intent to do just that is borne out by defendant’s twice expressed fear of identification (on the way to Ruby’s house and just before he choked her), his violence and the force used on her, his attempt to choke her, the manner in which he left her—unconscious, bound and gagged— and the real lack of necessity to render her unconscious in order to rape her. The evidence does not establish that the second forcible transportation of the victim, to her home, was for the purpose of either robbery or rape; the circumstances clearly point up defendant’s intent to prevent her from later identifying him to the police either by doing away with her com-, pletely or by frightening her. The subsequent rape appears to have l?een secondary and (he result of a newly formed intent,
 

 
 *585
 
 Prior to the imposition of sentence defendant presented to the trial judge the same argument he here advanced raising the same issue. However, the judge heard the evidence and treated all of the acts as separate and divisible, accordingly-imposing sentence on each. He was wholly justified in finding that defendant’s course of criminal conduct was divisible into separate and distinct acts, each constituting a crime and each punishable under the law.
 

 Appellant augmented the record to include the prosecutor’s opening and closing argument to the jury on the representation that “in the course of his argument [the prosecutor] commented on appellant’s failure to testify.” We have carefully examined both arguments and find his claim to be wholly false.
 

 The judgment is affirmed.
 

 Wood, P. J., and Pourt, J., concurred.
 

 A petition for a rehearing was denied November 20, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 17, 1968.
 

 [1]
 

 In pertinent part, section 654, Penal Code, provides: “An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . .
 
 ,i3