[Crim. No 2682. Fourth Dist., Div. One. Jan. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CLIFFORD VON LATTA, Defendant and Appellant.

332

John H. Gilbert, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Prod, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was charged with the offenses of possession of marijuana, a violation of Health and Safety Code, section 11530, and the unlawful possession of a firearm, a violation of Penal Code, section 12560; was convicted of the former and acquitted of the latter; was granted summary probation; and appeals, asserting as grounds for reversal: (1) Insufficiency of the evidence to support the conviction; (2) admission of evidence of prior misconduct and of a prior conviction was error; (3) defendant was denied a speedy trial;

(4) the conviction is based on evidence which was the product of an unlawful search and seizure; (5) defendant was denied the right to represent himself; and (6) his prosecution and sentence violated his constitutional guarantee against double jeopardy and the multiple prosecution and punishment proscriptions of Penal Code, section 654.

On April 22, 1966, defendant was on parole from a prison sentence for armed robbery. On the late morning of that day he entered a house at 113 Coral Street, Newport Beach. His parole officer, a man named Slater, wanted to take him into custody for parole violation; had solicited the assistance of two police officers named Epstein and Amburgey; and with the latter, from a place across the street, observed defendant enter the house, which they had under surveillance. It was known defendant previously had visited this house, which was occupied by three men, two of whom were ex-convicts. Slater was unarmed; advised the police officers he believed defendant was dangerous; and took a position about 20 feet distant while Epstein went to the front door of the house and Amburgey went to the rear. A third officer who had been called in the meantime, and was armed with a shotgun, also went to the rear. Epstein knocked on the front door which was opened by one of the occupants named Luna; identified himself as a police officer; and asked permission to enter and talk with Luna. Permission was granted. Epstein entered and stated the purpose of his presence. Slater followed. Defendant came into the room from the kitchen; started up a stairway; was stopped by Slater, who took him into custody; held one hand behind him out of sight of the officers; and in response to an order from Epstein placed both hands in front of him, revealing a pipe in the hidden hand which was warm and contained marijuana. Epstein was familiar with the odor of marijuana; detected its presence; and placed defendant under arrest.

On a table in the room, in plain sight, were a cellophane bag, a ceramic bowl, and four handrolled cigarettes, all containing marijuana; also several packages of wheatstraw papers, a paper bag and a flour sifter containing fragments of marijuana. Thereupon the three occupants also were arrested. The pipe and the foregoing items were taken into custody and subsequently introduced in evidence.

A search of the automobile defendant had used to come to the house revealed traces of marijuana, and a rifle which was the subject of the gun possession charge.

Approximately six hours after defendant's arrest, Slater, accompanied by two police officers, searched defendant's residence in Garden Grove, about 30 miles from the place of his arrest, for other evidence of parole violation in connection with narcotics; found approximately 4 pounds of marijuana hidden in the garage; and seized the same. Defendant was charged and convicted of possession of this marijuana with intent to sell. Judgment was pronounced on August 11, 1966. Defendant appealed. This court affirmed by a nonpublished opinion filed November 21, 1967. Trial of the instant action commenced on August 22, 1966, i.e., 11 days after pronouncement of judgment on the possession with intent to sell charge.

■■■ Defendant's contention the evidence is insufficient to support the conviction is based upon the claim that as to possession of the marijuana in the pipe there is no showing he had knowledge the substance in the pipe was marijuana, and that as to the marijuana on the table there is no showing he had actual or constructive possession thereof. ■■■ A defendant's knowledge of the narcotic character of a substance in his possession may be shown by circumstantial evidence. (*Rideout* v. *Superior Court*, 67 Cal.2d 471, 475 [62 Cal.Rptr. 581, 432 P.2d 197].) ■■■ The conclusion defendant knew the substance in the pipe and on the table was marijuana is supported by the fact he sought to conceal the pipe from view, marijuana fragments were found in his automobile, he had a large quantity of marijuana hidden in the garage of his home at Garden Grove, and he testified, in response to a question whether he knew anybody in the house was smoking marijuana, ''No, not one of us were under the influence of narcotics or anything like that. Just in possession.''

The conclusion defendant jointly participated in possession of the marijuana on the table and, in any event, aided and abetted the offense of its possession by the other occupants of the house is supported by evidence showing the marijuana on the table was in plain sight, and appeared to be in the process of being made into cigarettes; that he came into the house through the room in which this table was located and must have seen what was in plain sight; that, according to his testimony, he did not bring any marijuana into the house; and that he had a warm pipe filled with marijuana which, inferentially, he must have taken from the table. (Gen. see *People* v. *Fleming*, 191 Cal.App.2d 163, 168 [12 Cal.Rptr. 530]; *People* v. *Hood*, 150 Cal.App.2d 197, 201 [309 P.2d 856]; *People* v. *Moore*, 120 Cal.App.2d 303, 306 [260 P.2d 1011].)

■ Over objection the court admitted evidence tending to show the reason the parole officer decided to take defendant into custody was because the latter had been associating with known ex-felons, with persons of ill repute, and with a prostitute; had been living off of the earnings of a prostitute; had been using a fictitious name; and had driven an automobile at 75 miles per hour in a 35-mile zone in an attempt to elude officers following him. The objection to this testimony was made upon the ground it was immaterial and hearsay. After the parole officer had testified respecting information which had been brought to his attention concerning defendant's conduct, counsel for defense stated: ''I'm going to object to all this as hearsay. They're trying to bring in garbage that doesn't even apply. If they can prove it, let them prove it.'' The court overruled the objections on the ground the evidence was offered on the issue of probable cause to take defendant into custody and forthwith gave the following instruction: ''The jury will consider this part of the evidence only for the purpose of the reasonableness of the parole officer's decision to proceed with the arrest, is that clear to all of you? Is there any person on the jury who doesn't clearly understand that? All right. You may proceed.'' Previously defense counsel had questioned the good faith of the parole officer in taking defendant into custody. The inquiry to which objection was made appears to have been prompted by the good faith issue. The objection properly was overruled. On appeal defendant directs attention to the rule that the issue of probable cause should be determined by the court outside the presence of the jury (*People* v. *Holmes,* 237 Cal.App.2d 795, 797 [47 Cal. Rptr. 246]), and contends the proceedings in question violated this rule. Objection to the evidence was not made upon the ground it should be taken outside the presence of the jury. Even assuming defendant may assert the alleged error on appeal without previous objection before the trial court, no prejudice resulted. The instruction of the court limiting consideration of the evidence to the issue of the reasonableness of the parole officer's decision to arrest was direct and forceful. Thereafter the parties stipulated the officer had a right to arrest defendant on the date in question, and the court thereupon instructed the jury it was to accept the stipulation as a fact in the case. After an examination of the entire cause, including the evidence and determinable issues in the case, we are of the opinion it is not reasonably probable a result more favorable to defendant would have been reached in the

absence of the error. Under these circumstances no cause for reversal exists. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Upon cross-examination, defendant, without objection, testified he had been convicted of the felonious offense of possession of marijuana with intent to sell. This was proper impeachment evidence. Thereafter he was questioned about certain details of that offense. His objection thereto was overruled. Under the circumstances, no error occurred as the inquiry was directed to evidence relevant to the issue of knowledge of the narcotic character of the substance in the pipe and on the table. (*People* v. *Horn,* 187 Cal.App.2d 68, 75 [9 Cal.Rptr. 578]; *People* v. *Valenzuela,* 174 Cal.App.2d 759, 762 [345 P.2d 270].)

■ Defendant contends the case should have been dismissed pursuant to Penal Code, section 1382 because the trial occurred more than 60 days after the information was filed. In support of his position he poses and answers the argument he consented to trial after the 60-day period with the claim his consent was ineffectual because he was not then represented by counsel and the court did not explain to him his rights and the effect of his consent, as is required by section 1382. However, he disregards, and does not mention the fact the trial was set at a date beyond the 60-day period at his request. Under these circumstances, he may not assert he was not afforded a speedy trial as required by law. ■ In any event, prior to and at the time of trial he was represented by counsel. No objection was made to the trial beyond the 60-day period and, under settled law, his contention may not be raised for the first time on appeal. (*People* v. *Wilson,* 60 Cal.2d 139, 146, 148 [32 Cal.Rptr. 44, 383 P.2d 452]; *People* v. *Hill,* 251 Cal.App.2d 391, 393 [59 Cal.Rptr. 369].)

■ Defendant contends the officers entered the Newport Beach house using his arrest as a pretext to search for evidence; cites the rule stated in *People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927], declaring such a search illegal; and claims it was error to admit the evidence obtained by this search. The record does not support the contention defendant's arrest was used as a pretext to search the premises. The parole officer had reason to take him into custody as a parole violator; had been trying to locate him; had the Newport Beach house under surveillance as one of the premises defendant might visit; and properly entered the house for the purpose of taking him into custody. Actually no search

was conducted. Defendant had the marijuana-filled pipe in his hand; and the marijuana on the table was in plain sight. The contention is without merit.

■ Shortly before and during the trial defendant was represented by counsel. Previously he had represented himself. After all parties had rested defendant personally and through his attorney requested he be permitted to represent himself for the purpose of arguing to the jury. He did not claim his counsel had not adequately represented him during the trial. His purported reason for wishing to address the jury was that his presentation could more readily convince them of his sincerity and honesty. Although he represented to the court his argument would be based upon the evidence, it is apparent he intended to support his position by reference to all matters within his knowledge whether or not they were included in his testimony as a witness.[1] The court concluded it would not be for his best interest to permit him to argue the case; observed he had "a tendency to make statements that are not supported by the evidence"; and expressed the belief, "I think in a closing argument he would be his own worst enemy."

The trial court may refuse to permit a defendant to represent himself where his request to do so is made after the trial has commenced; is limited to the sole purpose of presenting the arguments in his case; is not based on any inadequacy of representation by his counsel; and would not be for his best terests. (Gen. see *People* v. *Maddox,* 67 Cal.2d 647, 648 [63 Cal.Rptr. 371, 433 P.2d 163]; *In re Connor,* 16 Cal.2d 701, 709 [108 P.2d 10]; *People* v. *Shroyer,* 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460]; *People* v. *Gaither,* 173 Cal.App.

---

[1]Defendant made the following statement to the court:

"This thing, your Honor, has revolved from a jury trial for possession, an ex-con with a gun charge to a battle of character, and I think the jurors now see me as a black-hearted monster.

"As I said to my attorney, a dope-smoking pimp with a gun, and this isn't the case, and I think if I stand in front of the jury, talk to them, attempt to tell them my side of the story, present them a little bit of myself, they will become a little more aware of the fact that I am not this black-hearted monster they think I am.

"This is the reason I'd like to go pro per, present myself rather than the evidence to the jury.

" . . . . . . . . . . .

"There's been evidence introduced with no substantial foundation at all, absolutely none, and this evidence that has been introduced, character evidence, evidence to support my lack of character, supposedly can be challenged by me on a moment's notice with absolutely no trouble at all, challenged by the very evidence that I can present within the bounds of evidence in argument to the jury . . . ."

2d 662, 670 [343 P.2d 799].) Furthermore, a defendant does not have the right to have his case presented in court by counsel and by himself alternately as his pleasure dictates. (*People* v. *Mattson*, 51 Cal.2d 777, 789 [336 P.2d 937].) The order denying defendant's request was not error.

 Defendant may not urge the defense of double jeopardy on appeal because he did not enter a plea of once in jeopardy in the trial court. (*In re Harron*, 191 Cal. 457, 467 [217 P. 728].)

Defendant's contention it was error to prosecute and sentence him in the instant case after he had been prosecuted, convicted and sentenced in the previous Garden Grove case, is premised upon the multiple prosecution and multiple punishment proscriptions in Penal Code, section 654; upon the scope of those proscriptions as delineated in *Kellett* v. *Superior Court*, 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], *In re Johnson*, 65 Cal.2d 393 [54 Cal.Rptr. 873, 420 P.2d 393], and similar decisions; and upon the conclusion the offense of possession of marijuana in his Garden Grove residence with intent to sell and the offense of possession of marijuana in the Newport Beach residence are the product of a single act or indivisible course of conduct.

 The elements of the offense of possession of marijuana are actual control and dominion or the right to exercise control or dominion over the drug, with knowledge of its presence and narcotic character. (*People* v. *Groom*, 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359] ; *People* v. *Blanton*, 195 Cal.App.2d 278, 281 [15 Cal.Rptr. 568].) The element of concern in the case at bench is that of control or dominion which, in substance, is the "act of possession."[2] A person has possession of marijuana when he "has physical control thereof with intent to exercise such control, or having had such physical control has not abandoned it, and no other person has that possession." (*People* v. *Lunbeck*, 146 Cal.App.2d 539, 541 [303 P.2d 1082] ; *People* v. *Gory*, 28 Cal.2d 450, 455 [170 P.2d

___

[2]In *People* v. *Wasley*, 245 Cal.App.2d 383, 386 [53 Cal.Rptr. 877], which concerned the issue of double punishment of different offenses of possession of different weapons, the court said, in response to defendant's contention the possession of the two weapons which occurred at the same time was a single act, that: "It is difficult to classify possession as an 'act' although acquisition clearly would be"; indicated possession might better be considered the product of a course of conduct; and held the offenses of possession of each of the weapons were not the product of "a single act or single course of conduct." We use the phrase "act of possession" to describe the conduct of the defendant in the exercise of control and dominion over the narcotics.

433].) The control incident to possession may be actual or constructive. (*People* v. *Thomas,* 210 Cal.App.2d 553, 556 [26 Cal.Rptr. 843].) As a consequence, a person is in actual possession of marijuana which he holds in his hand, and is in constructive possession of other marijuana which he keeps at a place where it is subject to his control and dominion even though he is not present at that place. (*People* v. *Bock Leung Chew,* 142 Cal.App.2d 400, 403 [298 P.2d 118] ; *People* v. *Crews,* 110 Cal.App.2d 218, 221 [242 P.2d 64].)

In the case at bench defendant was at his residence in Garden Grove on the morning of the day of the charged offense of possession of marijuana with intent to sell. Thereafter, on the same day, he came to the residence at Newport Beach where he was arrested for possession of marijuana in a pipe in his hand. Six hours after his arrest in Newport Beach, but on the same day, the officers discovered the marijuana in the garage of his residence in Garden Grove. Defendant had actual possession of the marijuana in his garage during the time he was at his Garden Grove residence on the day in question; had actual possession of the marijuana in the pipe in his hand at the Newport Beach residence; participated in the joint possession of the marijuana on the table in that residence; and while at Newport Beach, had constructive possession of the marijuana in the garage at Garden Grove.

Defendant's conduct constituting actual possession of the marijuana in his garage at Garden Grove on the morning before he came to Newport Beach was distinct from his conduct constituting actual possession of the marijuana in the pipe or on the table at Newport Beach. The subject matter of each "act of possession" was different. (Cf. *People* v. *Winchell,* 248 Cal.App.2d 580, 596 [56 Cal.Rptr. 782] ; *People* v. *Wasley,* 245 Cal.App.2d 383, 386 [53 Cal.Rptr. 877].) Defendant testified he did not bring any marijuana with him into the Newport Beach residence.[3] However, even assuming the marijuana in the pipe and on the table may have been a part of the marijuana in the garage, this fact is not determinative. (*People* v. *Buchanan,* 106 Cal.App.Supp. 765, 767 [288 P. 50].) A finding of separate "acts of possession" has been upheld where the subject matter of a later possession was part of the subject matter of a prior possession. (*People* v. *Tenney,*

---

[3]The evidence on the issue at hand must be viewed in the light most favorable to the judgment. (*People* v. *Jackson,* 255 Cal.App.2d 584, 587 [63 Cal.Rptr. 359].)

162 Cal.App.2d 458, 463 [328 P.2d 254].) The fact the two "acts of possession" occurred on the same day does not establish *per se* they were not separate and distinct. (*People* v. *Wasley, supra,* 245 Cal.App.2d 383, 387.) In *People* v. *Holliday,* 120 Cal.App.2d 562, 564-565 [261 P.2d 301], it was held possession of a narcotic occurring as an incident to the offense of transportation, and possession thereof occurring before or after the transportation, are separate and distinct even though occurring on the same day; the transportation with incident possession, on the one hand, and the possession before or after such, on the other hand, were separate criminal acts; and each supported a separate conviction. (See also *People* v. *Buchanan, supra,* 106 Cal.App.Supp. 765, 767—transportation and possession of liquor.) Similar holdings were made in cases involving a sale, and possessing subsequent to the sale. (*People* v. *Rodriguez,* 202 Cal.App.2d 191, 197 [20 Cal.Rptr. 556] ; *People* v. *Tenney, supra,* 162 Cal.App.2d 458, 463.)

The contention the offense of possession of marijuana in Garden Grove with intent to sell and the offense of possession of marijuana in Newport Beach were the product of one "act of possession" is without merit.

Also without merit is the contention the two offenses were part of an indivisible course of conduct which, under the decision in *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], subjects them to the section 654 proscriptions. Separate criminal acts are not part of an indivisible course of conduct unless they are incident to a single intent and objective. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *People* v. *Jackson,* 255 Cal.App.2d 584, 587 [63 Cal.Rptr. 359] ; *People* v. *Winchell, supra,* 248 Cal.App. 2d 580, 586-587, and cases cited.) Defendant's intent and objective respecting the marijuana in the Garden Grove house was distinct from his intent and objective respecting the marijuana in the Newport Beach house. (See *People* v. *Wallace,* 199 Cal.App.2d 678, 681 [18 Cal.Rptr. 917] ; *People* v. *Rodriguez, supra,* 202 Cal.App.2d 191, 197.) As to each offense the specific conduct evidencing possession was different; the purpose was different; and the subject matter of the possession was different. (See *People* v. *Wasley, supra,* 245 Cal.App.2d 383, 386-387—involving possession of two different weapons.)

It is proper to note the offense of possession of the marijuana in the Garden Grove garage was a continuing offense, occurring through conduct constituting actual possession

while defendant was in the house, and through conduct constituting constructive possession while he was in Newport Beach. (Cf. *People* v. *Ford*, 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].) However, this fact does not furnish a basis for holding the possession incident to the Garden Grove offense and the possession of the marijuana in Newport Beach were parts of an indivisible course of conduct. Each offense was the product of an independent transaction. (Gen. see *People* v. *Hernandez*, 242 Cal.App.2d 351, 360 [51 Cal.Rptr. 385].)

A further matter for consideration is the difference between the scope of the multiple prosecution and the multiple punishment proscriptions. The former is broader than the latter. The multiple prosecution proscription applies where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part." (*Kellett* v. *Superior Court, supra,* 63 Cal. 2d 822, 827.) Upon this basis particular circumstances may foreclose multiple prosecution even though they may not foreclose multiple punishment. (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 824-826.) The reason for the broader basis of the multiple prosecution proscription is to effect the purpose of the statute as a safeguard against harassment and the waste of public funds. (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827.) In the case at bench the offense at Garden Grove and the offense at Newport Beach were not offenses in which the same act or course of conduct played a significant part. Noteworthy, in addition to what heretofore has been stated regarding this matter, is the fact the prosecution of the Newport Beach offense involved four defendants actually participating in or aiding and abetting the offense. Defendant's conduct at the Newport Beach house encompasses actual possession of the marijuana in the pipe, and joint participation with the other defendants in possession of the marijuana on the table as well as aiding and abetting them in the commission of that offense.[4] Defendant moved for and was granted a separate trial. Although sentence was imposed for the Garden Grove offense before trial of the Newport Beach offense, both cases were pending at the same time. Defendant did not request a consolidation of the two cases. (See Pen. Code,

[4]Whether this conduct constituted one or more offenses (Gen. see *People* v. *Greer*, 30 Cal.2d 589, 604 [184 P.2d 512]), is not material to the issue at hand, and no consideration need be given this phase of the case.

§ 954.) In the former, trial was by the court; in the latter, trial was by a jury. Viewed in the light of the circumstances noted, the instant prosecution did not subject defendant to harassment or involve a waste of public money within the letter or spirit of the multiple prosecution proscription statute. (Gen. see *People* v. *Winchell, supra,* 248 Cal.App.2d 580, 591.)

The judgment is affirmed.

Brown (Gerald), P. J., concurred.

WHELAN, J.—I dissent.

When the defendant, before the trial of the case now on appeal, was punished for the possession, in Orange County on April 22, 1966, of marijuana with intent to sell, he was punished for possession of any and all marijuana he possessed concurrently in time on that date and in that county. The district attorney, when in June 1966 he filed an information in superior court case # C-16846 charging defendant with possession with intent to sell on April 22, 1966, knew he had on May 27, 1966 filed an information in superior court case # C-16810, in which this appeal was taken, charging defendant with possession of marijuana on April 22, 1966.

That the district attorney sought to divide the crime of possession for sale from its included offense of possession by charging them in separate informations tried at different times should not preclude an examination of the evidence to determine whether defendant has not been twice punished for a single offense. Although the claim of double jeopardy must be raised by plea in the trial court (Pen. Code, § 1017; *People* v. *Garcia,* 166 Cal.App.2d 141 [333 P.2d 69]; *People* v. *Mims,* 136 Cal.App.2d 828 [289 P.2d 539]), and I agree that failure to raise the question in the trial court waives the objection that both charges should have been joined in a single accusatory pleading, the objection that a defendant has been twice punished for the same offense may be first raised after the pronouncement of judgment. (*In re Johnson,* 65 Cal.2d 393 [54 Cal.Rptr. 873, 420 P.2d 393].)

The multiple punishment and multiple prosecution aspects of the prohibition of section 654, Penal Code, are separate and distinct; one may be applicable where the other is not. (*Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].)

While disregard by the district attorney of the rights of the defendant to be subjected only to a single prosecution and to a joinder of both charges in a single accusatory pleading may not for the first time be raised on appeal, the requirements of joinder may be considered so far as they throw light on the question of double punishment. Accordingly the question of double punishment should be viewed as though both charges had in fact been joined in a single accusatory pleading and tried at the same time. That such procedure should have been followed is clear.

That is so even though the complaints filed in the municipal court may have been filed in different judicial districts. Both informations alleged the place of possession only as in Orange County, and the time as April 22, 1966. There were, therefore, two prosecutions, one of which was for an offense which so far as the face of the accusatory pleadings discloses was included in the other.

The fact that in the present case defendant was charged jointly is of no consequence in this regard even if all defendants had been tried jointly. The record before us shows that the jury that tried the present case was not informed that defendant was charged jointly with others; and the jury was not called upon to find and did not find that the marijuana that defendant was charged with possessing was possessed by any other person. It is only for his own possession of the marijuana that he could be convicted.

If the two charges had been united in a single accusatory pleading and tried together, resulting in a verdict of guilty on both counts, only one sentence would have been pronounced; while an acquittal on the charge of simple possession would have been tantamount to an acquittal as to both charges. It was perhaps the possibility of the latter contingency that motivated the separation of the charges.

On the other hand, if in the assumed circumstances a verdict of not guilty on the simple possession charge would have been inconsistent with a verdict of guilty on the charge of possession with intent to sell, a verdict of guilty of the included offense of possession on the charge of possession with intent to sell and of guilty on the charge of simple possession could be the basis of only one punishment.

The issue would be presented in bolder outline if defendant had been charged in a single accusatory pleading with two counts of simple possession.

The question whether a defendant might be guilty of more than one offense if he had possession concurrent in time of

contraband of the same kind in two or more different counties is not involved; nor is the question whether a defendant might be guilty of distinct acts of possession on different dates, where he is so charged, if on one of the dates he possessed marijuana, and on a later date had acquired other marijuana while he continued to possess the marijuana first acquired; and not involved is the question whether two counts charging possession on or about the same date might not be separately supported by proof of the possession on one date of marijuana and on another date of different marijuana.

It is not upon any theory that the possession by defendant of marijuana in Newport Beach and in Garden Grove were parts of an indivisible course of conduct that I believe the mandate of section 654, Penal Code, has been disregarded.

It was stated by the district attorney in the trial of superior court case # C-16846, the judgment in which was appealed from in 4 Crim. No. 2661, that defendant was there being charged with possession of the marijuana found in the garage of defendant's Garden Grove home.

In the case in which the present appeal was taken, the evidence in chief for the People made no mention of the marijuana found in the Garden Grove garage, but was confined to the marijuana found in the pipe, found on the table, and found in defendant's car, all of which was in Newport Beach.

There was no testimony that the marijuana found in Newport Beach had originally been a part of that found in Garden Grove that had been brought by defendant from the one place to the other, the defendant protesting rather that he was ignorant of the presence of marijuana in either place, so that it cannot be said that the possession of the marijuana found in Newport Beach and the possession of that found in the garage in Garden Grove were parts of an indivisible course of conduct.

There were multiple punishments because the defendant cannot twice be guilty of possession of marijuana in the same county on the same day merely because some of the marijuana possessed is in one place, some in another, when the possession of both is coincident in time. Punishment of two separate convictions of possession within the jurisdiction of the same trial court, based solely upon the fact that the contraband was divided into two lots found in different places, might result in a greater punishment for one offender than for another who, though he might possess a greater quantity, kept it all in one spot.

That there was a possession coincident in time is obvious. The evidence of possession in both trials was confined to the date of April 22. Either defendant possessed the marijuana in the Garden Grove garage at the same time he possessed the marijuana in Newport Beach or he had not possessed the marijuana in the garage at all. He had no opportunity to place the marijuana in the garage after his arrest in Newport Beach. It is true that an agent of his, acting under his direction, might have done so, but to assume such a state of facts is to go beyond the evidence.

The fact that the marijuana was found in the garage some six and one-half hours after defendant's arrest is, therefore, immaterial. That more than one lot of the same contraband possessed simultaneously within the jurisdiction of the same trial court constitutes but one possession has been recognized in decisions of several courts dealing with the illegal possession of intoxicating liquor. (*Richardson* v. *City of Tuscaloosa* (Ala. Ct. of Appeals) 22 Ala.App. 604 [118 So. 496]; *Puckett* v. *Commonwealth* (Ky. Ct. of Appeals) 210 Ky. 768 [276 S.W. 811]; *Beaman* v. *State* (Okla. Ct. of Appeals) 69 Okla. Crim. 455 [104 P.2d 260].)

In *Puckett* v. *Commonwealth, supra,* 276 S.W. 811, where one pint of whiskey was found in defendant's place of business, and a large quantity was found later the same day in his residence, the court stated: ". . . the possession of the whisky in the residence and in the pool room at the same time and in the same jurisdiction constituted but one illegal possession of the whisky . . ."

The defendant in *Beaman* v. *State, supra,* 104 P.2d 260, was charged and convicted jointly with another of possession of liquor found in a house after he alone had earlier been charged with and convicted of possession on the same day of other liquor that he was engaged in carrying in the outdoors.[1]

The California decisions of *People* v. *Puppilo,* 100 Cal.App. 559 [280 P. 545], and *People* v. *Willard,* 92 Cal. 482 [28 P. 585], are of some interest.

In *People* v. *Puppilo, supra,* 100 Cal.App. 559, conviction of possession of a concealable firearm by an alien was reversed

---

[1]In *People* v. *Mehra,* 73 Cal.App. 162, 174 [238 P. 802], it is said: "By the eighth instruction the jury is advised that the offense of unlawful possession is transformed into a different crime if that unlawful possession is inside instead of outside of a building. The statute makes no such distinction. Unlawful possession, as unlawful possession, is simply unlawful possession whether the forbidden article is upon the person or within a building."

where two counts each charged the offense of such possession on the same day without further identification or description of the firearm than as "a pistol." Although there were two pistols in defendant's house, he was found guilty on one count, not guilty on the other. The information was held to charge only a single offense. It is, indeed, stated that in the possession of two such firearms concurrently there could be only one violation. (Cf. *People* v. *Wasley,* 245 Cal.App.2d 383 [53 Cal.Rptr. 877], where the convictions were upheld of possession by an ex-felon of a pistol, and also of possession of a sawed-off shotgun.)

In *People* v. *Willard, supra,* 92 Cal. 482, it is suggested that if at the same time one knowingly receives stolen property taken from two different houses on different dates, there is but a single crime of receiving stolen property; otherwise, if the two lots were received on different days. (See also *People* v. *Brumley,* 242 Cal.App.2d 124, 130 [51 Cal.Rptr. 131].)

Although possession with intent to sell is defined as a different crime from simple possession, there is no difference in the quality of the possession as such. The intent to sell is not the gravamen of the crime of which the possession is only a necessary element, as in the crime of selling or transporting; and the possession is not merely an incident to the crime, but is the very basis of it. It is no different in quality, *qua* possession, than possession without the intent. Intent divorced from any present or future sensibly perceptible action or conduct may not be punished criminally.

Simple possession of marijuana may be interrupted and terminated by loss, theft, seizure, destruction, sale or other disposition by the possessor. It is not terminated by the formation of an intent to sell it without an actual sale and delivery.

The setting aside by a defendant for his own use of a portion of a whole of which he intended to sell the remainder, with the contemporary possession of both, would not create two acts of possession.

Possession with intent to sell, therefore, in its relationship to possession should be distinguished from the crimes of selling and transporting.[2]

---

[2]In a posthumous decision prepared by the late Justice Ward of Division One of the First District, adopted as the opinion of the court, it is stated: "Possession may be a circumstance tending to prove transportation but it is not an essential element to that specific offense any more than to an 'offer to transport' or an 'attempt to transport' a narcotic." (*People* v. *Watkins,* 96 Cal.App.2d 74, 76 [214 P.2d 414].)

The presence of marijuana in Newport Beach was evidence that as to it the crime of unlawful possession was being committed by someone, and the presence of marijuana in Garden Grove was evidence that as to it the crime of unlawful possession was being committed by someone and, because of the quantity, inferentially for sale; there was so far, a basis for considering that there were two separate possessions. Because the contraband in both places was possessed at one time by defendant, it must be said that there was, on the date charged in the informations, but a single possession so far as defendant is concerned, although defendant may have intended a different disposition as to some of the marijuana than with regard to other of it.

It is argued in the case at bench that defendant took possession of the marijuana in Newport Beach at a time when he already had possession of that in Garden Grove. However, defendant is not charged with a crime of receiving marijuana into his possession, were there such an independent crime; nor does the evidence show when he came into possession of the marijuana at either Newport Beach or Garden Grove.[3]

It could hardly be claimed that if defendant had taken the marijuana on his person from Newport Beach to his home and was there arrested and the marijuana in the garage found immediately thereafter, two separate charges of possession could be sustained.

It may be said that there has been a fragmentation in space of a single possession, just as in *In re Johnson, supra,* 65 Cal.2d 393, a single sale was fragmented in time.

The California decisions holding that there may be separate crimes of possession and of other acts in the commission of which possession is a necessary element are not inconsistent with these views.

Such are the cases in which separate convictions were upheld for concurrent possession of different kinds of prohibited narcotics (*People* v. *Lopez,* 169 Cal.App.2d 344 [337 P.2d 570]; *People* v. *Mandell,* 92 Cal.App.2d 865 [208 P.2d 416]; *People* v. *Mandell,* 90 Cal.App.2d 93 [202 P.2d 348]); for possession incident to sales made on different days (*People* v. *Rosales,* 226 Cal.App.2d 588 [38 Cal.Rptr. 329]); or for possession and sale of different marijuana on the same day, the possession being of marijuana acquired subsequent to and not incidental to the sale (*People* v. *Wallace,* 199 Cal.App.2d 678

[3]See *People* v. *Wasley,* 245 Cal.App.2d 383 [53 Cal.Rptr. 877], for suggestion that "possession" is not an act, although acquisition would be.

[18 Cal.Rptr. 917.]) ; or for sale and for possession on the same day, the possession being of narcotics retained after the sale (*People* v. *Tenney,* 162 Cal.App.2d 458 [328 P.2d 254]) ; or for transporting marijuana and possession on the same day of marijuana other than that transported (*People* v. *Holliday,* 120 Cal.App.2d 562 [261 P.2d 301]; *People* v. *Roland,* 183 Cal.App.2d 780 [6 Cal.Rptr. 895]).

*People* v. *Roland, supra,* 183 Cal.App.2d 780, contains a statement that there might have been two separate crimes of possession, both unrelated to the crime of transportation, that must be considered as dictum, inasmuch as there was a single conviction of possession and a conviction of transportation.

Some comment must be made upon *People* v. *Cole,* 113 Cal. App.2d 253 [248 P.2d 141], where the defendant was charged in two separate counts with possession of marijuana and in a third count with transportation, all alleged to have occurred on or about the same date in the same county. The court noted that multiple pleading is permitted. One possession count was on the theory it was incident to the transportation; the two counts relating to such possession and transportation had to do with a single weedy flake about the size of a fingernail, a total of 12 seeds, and an apparently empty tobacco can from which a trace of material was scraped, all found in a car in front of defendant's house. The other count had to do with a large quantity of marijuana found on a shelf in an open compartment outside the house. Verdicts of guilty were returned on all counts. The verdicts on the two counts having to do with the particles and seeds found in the car were set aside on appeal because of erroneous instructions. The decision cannot be considered authority for the proposition that two separate convictions of concurrent possession could be upheld; although convictions of possession of certain marijuana and transportation of other marijuana might stand. What action would have been taken by the court if defendant had been convicted only on the two counts of possession need not be the subject of speculation.

Since defendant was placed on probation for five years in the case in which this appeal was taken, unless he has already been sentenced under the provisions of section 1203.2a, Penal Code, the trial court has probably lost jurisdiction over him if he was in fact imprisoned under the sentence imposed in superior court action # C-16846. It is possible that he may have been sentenced under section 1203.2a in the matter in which this appeal was taken, so that the question whether he

committed only one crime continues to be material. He would have been subject to such sentencing although judgment in superior court action # C-16846 was pronounced before the granting of probation in the case at bench. (*In re Klein,* 197 Cal.App.2d 58 [17 Cal.Rptr. 71].)

If defendant's probation has been revoked and judgment pronounced in the trial court for the conviction in the present case, such judgment should be reversed; if judgment has not been pronounced, the order granting probation should be reversed.

A petition for a rehearing was denied February 14, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.