[Crim. No. 3747.   First Dist., Div. One.   Aug. 17, 1960.]

THE PEOPLE, Respondent, v. DOUGLAS GILBERT
ROLAND, Appellant.

Frank M. Bowen, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant appeals from a judgment of conviction, after jury trial, of two violations of section 11500, Health and Safety Code: (1) unlawful possession, and (2) transportation of marijuana.

## QUESTIONS PRESENTED

1. Was there reasonable cause for the arrest and search without a warrant?

2. Were the acts charged legally one inseparable act?

## EVIDENCE

Except as affected by the determination of the above legal questions, defendant does not claim that the evidence is not sufficient to support his conviction. An informant, one Baker, was confined in the San Mateo County jail on a charge filed by his wife. Baker informed Sheriff's Inspector Moran that his two cellmates had asked him to procure perjured witnesses on their behalf. Baker produced a letter from one of the cellmates addressed to the latter's girl friend, urging her to persuade Mrs. Baker to withdraw her charges so that Baker could be released and then obtain the desired perjured testimony. This letter corroborated Baker's statement that the cellmates wanted him to obtain perjured witnesses. Baker then advised the inspector that he knew certain persons who would sell him narcotics, and volunteered to obtain narcotics from them. Baker suggested that he be furnished a Spanish-type agent whom he would introduce to the narcotics seller as his brother-in-law, as Baker's wife was a Peruvian. Upon his release from the county jail the inspector instructed Baker to telephone the inspector when he found a suspect with narcotics so that the inspector could arrange for an undercover agent to make a "buy."

Between 7 and 8 a. m. on April 8 Baker met Crawford Robinson* in the Redwood City bus depot, having been told by one Meyers to meet Robinson there. Baker asked Robinson where he could buy narcotics. They took a bus to San Mateo and continued to discuss the purchase. At San Mateo Robinson took Baker to defendant's home. There Baker stated to defendant that he would like to buy five pounds of marijuana. Defendant said "It could be set up . . ." Baker then told defendant that it was his brother-in-law who actually wished to make the purchase and that Baker would have to contact

---

*Robinson was jointly indicted with defendant, but tried separately before the court without a jury. He was found guilty. Only defendant Roland's appeal is before this court.

him. As there was no phone at defendant's house Baker returned to the bus depot where he called the inspector, telling the latter that a narcotics buy was set up, that $100 would be the price of the narcotics, and that the sale would take place at Baker's home at 8:30 a. m. Baker also told the inspector to contact "your brother." The inspector concluded that a "buy" was arranged for which $100 was needed, as well as a Spanish agent to be introduced as Baker's brother-in-law.

Baker and Robinson returned to defendant's home. They with defendant then left in defendant's automobile for Baker's home in Menlo Park, defendant driving. Baker sat in the front seat with him. Robinson sat in the rear. Five newspaper-wrapped packages of marijuana covered with a piece of striped awning lay between defendant and Baker. Arriving at Baker's home, the three went inside, bringing the narcotics with them. Since the "brother-in-law" had not arrived, the three returned to the car, drove around and then returned. Defendant and Robinson remained in the car while Baker, pretending to find the buyer, went to a neighbor's house and again called the inspector.

In the meantime the inspector and Deputy Sheriff Olliffe had gone to meet State Narcotics Agent Ojeda (who was to act as the brother-in-law). They did not meet Ojeda. About 8:30 a. m. the inspector received a phone call from his office asking if he had "a narcotics going" at 571 Hamilton (Baker's home), and was told that "somebody is holding two parties at that address, and they have narcotics."

The inspector proceeded to Baker's home, and parked across the street. As he crossed the street he observed defendant's car parked in front of the next house. Baker then returned from making the phone call. Defendant started driving away. Baker said, "There they go, Bill. It is in the car." The inspector followed in his car, stopping defendant within a few blocks. Defendant stepped out. The inspector searched him, finding three marijuana cigarettes in his shirt pocket. Defendant admitted they were marijuana. Defendant was then placed under arrest. The inspector found the five packages of marijuana wrapped in striped material lying on the seat.

On April 14, while defendant was out on bail, he contacted the inspector, saying that he would like to talk about the case. Defendant stated that the five packages found on the front seat of his car did belong to him; that they were made up in San Mateo from a kilo that he had purchased in San

Francisco; that Robinson brought Baker down to make a sale of narcotics and that defendant brought the five packages out of his house and took them to Menlo Park to sell them to Baker's brother-in-law.

Baker's wife testified for the defense, to Baker's bad reputation for truth and honesty. Defendant did not take the stand. Robinson testified, claiming in substance that he only went along for the ride, although he admitted that defendant had agreed to supply marijuana to Baker.

### 1. Reasonable Cause for the Arrest.

██ "[R]easonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." (*People* v. *Boyles* (1955), 45 Cal.2d 652, 656 [290 P.2d 535].) ██ "There are many cases holding that an arrest and search may be made solely on the basis of information received from a single reliable informant." (*People* v. *Boyd* (1958), 162 Cal.App.2d 332, 334 [327 P.2d 913].) ██ "A reliable informant apparently means a person whose information has in the past led the police to valid suspects." (*People* v. *Dewson* (1957), 150 Cal.App.2d 119, 128 [310 P.2d 162].) ██ Reasonable cause to make an arrest without a warrant has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty. (*People* v. *Dewson, supra*, 150 Cal.App.2d at p. 127.) ██ The same test can be applied to the question of whether the informant upon whom the police officer in good faith relied, was a reliable informant. Did the officer have information concerning the informant that would lead an ordinarily prudent and careful person to believe that the information could be relied upon?

██ Examining the evidence in the light of the above rules it appears that Baker was a reliable informant. There was a conflict in the evidence as to whether Baker had given the inspector information about narcotics sellers before. The inspector testified that although he had never used Baker in a case, the latter had told him about people that were selling narcotics, and "I had other information different than his that pointed to the same man on suspicion . . ." Thus to that extent the inspector found Baker's statement reliable. The inspector knew Baker. The latter was on parole and under the supervision of the law enforcement authorities. He had previously informed on his cellmates, and that in-

formation was supported by the letter written by one of them, which Baker turned over to the inspector. Moreover, the circumstances here, although possibly not sufficient alone to justify an arrest, taken with the above knowledge of the officer, were very significant. Baker was to arrange a buy from defendant and his partner, the buy to be made by a state agent. The initial phone call from Baker to the inspector indicated that the prearranged plan was to take effect that morning at Baker's home. Baker's second call, however, relayed to the inspector, indicated that the original plan was off and that someone was holding two persons at Baker's home with narcotics. As the inspector testified, he did not know then whether the suspects were holding the informant or the informant holding the suspects, so he proceeded immediately to the scene. As he parked and crossed the street, defendant's car pulled away and picked up speed. The fact that, as soon as he saw the inspector start towards Baker's car and saw that there was another man with the inspector and that the inspector was not dark-skinned as Baker's brother-in-law was supposed to be, defendant rushed away from the scene, was a very suspicious circumstance. Baker called to the inspector that the marijuana was in the car and the inspector then took off in hot pursuit.

The trial judge dismissed the jury so that the legal question of reasonable cause might be determined. The record well supports the judge's determination that the inspector had reasonable cause to make the arrest and search. We see no reason to reject that determination. The testimony of Baker's wife as to his reputation merely went to the weight of the evidence.

### 2. *Two Crimes or One?*

■ "The possession of narcotics is an offense distinct from the transportation thereof, but there can be only one conviction when a single act of transportation is proved and the only act of possession is that incident to the transportation." (*People v. Knowles*, 35 Cal.2d 175, 187 [217 P.2d 1].) ■ However, a ". . . conviction of possession can be sustained upon the basis of his possession of marijuana both *before* and *after* the transportation and *apart* from such transportation." (*People v. Holliday*, 120 Cal.App.2d 562, 564 [261 P.2d 301].)

■ Here there were both possession and transportation of the marijuana, the question being, though, was the one incident to the other or were they separable transactions? So far as the packages of marijuana are concerned, the possession

was incidental to the transportation. Defendant made them up from a kilo he purchased in San Francisco, and brought them to Menlo Park to sell to Baker's brother-in-law. They were then removed from the car by defendant at Baker's house, and then returned to the car. Thus the possession and transportation were inseparable. The only reason for the removal from the home and returning them to the car was because the expected buyer had not yet arrived. Thus the possession and transportation were directed to a common end—the intended sale.

However, there is a different situation with reference to the marijuana cigarettes found in defendant's pocket. These had no connection with the intended sale. The cigarettes were for use by defendant, or at least were not being transported for the sale to Baker's purported brother-in-law, and the transportation of them on his person in the car was not incidental to the use but merely coincidental. ██ ". . . the word 'incidental' must be taken in its usual and ordinary meaning and, therefore, as having reference to something which is subordinate to and dependent upon and follows the existence of another and principal thing. (Webster's Dictionary; *McFarlan Co.* v. *Potter,* 21 Ind.App. 692 [51 N.E. 737].) ██ More precisely, an incident is defined to be 'a thing which either usually or naturally and inseparably depends upon, appertains to or follows another that is more worthy.' (Bouvier.) In short, a distinguishing and dominating characteristic of an incident is to be found in the fact that it always and necessarily appertains to a pre-existing and principal thing . . ." (*Biggart* v. *Lewis,* 183 Cal. 660, 668-669 [192 P. 437].) ██ While the possession of the five pounds of marijuana merged into its transportation and defendant could be found guilty of only one offense therewith, the possession of the cigarettes was separate from the possession of the other marijuana and was a separate offense from either the transportation or possession of the other marijuana.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied September 8, 1960.