[Crim. No. 566. Fifth Dist. Mar. 4, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DANIEL
BRUCE DICKERSON, Defendant and Appellant.

Merle H. Jenkins for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—This case discloses the corruption of a part of the student body of North High School in Bakersfield

through the illegal sale of marijuana. The defendant, Daniel Bruce Dickerson, was convicted on two counts of the information, the first, the sale of marijuana to Allan Garner, a minor aged 16 years and a student at the high school; the second, a felonious possession of marijuana for sale. On appeal the defendant does not claim that the evidence is insufficient to warrant the conviction on either count. The appeal is based wholly on contentions that rulings of the trial court were prejudicially erroneous largely on constitutional grounds. We have given close attention to the arguments advanced by appellant's counsel, and without exception we find them unavailing; consequently, we are constrained to hold that the judgment is sound and should not be reversed. We shall examine these points in turn.

At the beginning of the trial, the defendant and his counsel waived a jury and moved that the defense be provided with any arresting officers' reports, investigation reports, notes and written information of statements from witnesses. The motion was granted by the court and cooperation promised by the district attorney's office.

The basic facts as stated most favorably to the respondent are as follows: the investigation and arrests involving several students at North High School in Bakersfield started with a complaint to law enforcement representatives by the dean of boys at the high school on September 18, 1967, that he had a reason to suspect that narcotics were being used by students; the investigation which followed led to the arrest of the appellant.

The prosecution established a chain of evidence pointing to the appellant who was arrested for selling marijuana. The following people were involved in the various transactions: Allan Garner, Stan Stevens, James Carpenter, Andy Kitchens, Terri Humbert, Brad Thomson and Steve Lampkins.

On September 26, 1967, Allan Garner who was then 16, was arrested for an offense involving marijuana. Garner admitted having purchased the forbidden substance from the appellant on three occasions. His help to the law enforcement officer in arranging to make another buy led to the arrest of the appellant.

Garner testified that he first met the appellant in September 1967. The introduction took place at a gas station located on Chester Avenue in Bakersfield. He went to the station with Bob Keeney, who purchased some marijuana from the appellant at that time. Garner did not buy any marijuana at this

first meeting, but the appellant gave Garner his phone number and told him he could buy marijuana later.

The next day Garner dialed the number that had been given, and the person who answered identified himself as the appellant. Garner said he wanted to buy $30 worth of marijuana, and the appellant said that he would meet him at the same gas station. The meeting took place that day and Garner bought the three ''lids'' of marijuana from the appellant. The price per ''lid'' was set by the appellant at $10, and each ''lid'' weighed approximately 21.92 grams. Garner made the buy for James Carpenter, and the marijuana was delivered to the latter school boy shortly after the transaction with the appellant was completed.

About three days later Carpenter again gave Garner $30 and asked him to buy more marijuana. Garner called the telephone number given him by the appellant and arranged for a purchase at the same gas station. The buy was completed and Garner delivered the marijuana to Carpenter.

The transaction which eventually led to the arrest of the appellant for violation of Health and Safety Code section 11532 (sale of marijuana to a minor) took place about a week after this second purchase for Carpenter. Garner was asked by Stan Stevens, a high school student, to buy $10 worth of marijuana. He called the telephone number which had been given him by the appellant and said that he wanted to buy one ''lid.'' The purchase was arranged, and delivery took place at the Chester Avenue gas station. Later that day Garner delivered the marijuana to Stevens.

Stevens testified that he was approached by Andy Kitchens and Terri Humbert who gave him $10 with which to buy marijuana. He then gave the money to Garner and asked him to make a purchase. Garner returned that same night and gave the marijuana to Stevens. It was contained in a plastic bag, and upon receiving it Stevens put it in his dresser drawer. The next morning Stevens gave the bag to Carpenter. It was to be delivered to Kitchens, and since Stevens did not have a high school class with him he thought that Carpenter could make the delivery. Carpenter had a class with Kitchens that morning and he delivered the marijuana as requested.

Kitchens testified that he and Terri Humbert had each given Stevens $5 with which to buy marijuana. The marijuana was delivered to him by Carpenter in a plastic bag, and he delivered half of the contents to Terri. His share was placed in an imported licorice can. A few days later he sold

part of his portion to Brad Thomson for $3. The rest was sold by him to Steve Lampkins for about $2. The sale from Kitchens to Thomson took place on the North High School campus, and was observed by Officer Higgins of the Kern County sheriff's department. The marijuana purchased by Thomson was turned over to the police and a warrant was issued for the arrest of Kitchens. The statement made by Kitchens led to the arrest of Lampkins, and indirectly to the arrest of Carpenter, Stevens and Garner.

Garner denied that he was involved in the dealings with marijuana, but subsequently admitted that he had made the purchases previously described. At the urging of Officer Higgins, Garner agreed to call the telephone number given him by Dickerson and arrange to buy additional marijuana. This was not the number he had called before, but a new number which had been given him by Dickerson shortly after the purchase for Stevens. Officer Higgins dialed the number, and Garner did the talking; he arranged to buy three lids of the substance for $30. Garner was told to go to a certain Foster Freeze location as soon as possible, and that the delivery and payment would take place there. The voice was identified by Garner as belonging to the person he had done business with on the three prior occasions. Prior to making the telephone call Garner was shown a photograph which he identified as that of the appellant. Also, prior to the call, the telephone number and the address were checked by Richard Ambrose, an agent for the state Narcotic Bureau, and another officer. Before identifying the picture, Garner had given the officers a physical description of the man known to him as ''Dan.''

As soon as the buy was arranged, Officer Higgins relayed the information to Ambrose. He was told where the meeting was to be, and that it would take place in 10 to 15 minutes. The photograph of ''Dan'' that had been identified by Garner was also dispatched to Ambrose, and it matched the physical description that had previously been given to him. After receiving the information concerning the arrangement for the buy, Ambrose and Lieutenant Cross, his law enforcement partner, moved to a position where they could see the entrance to the Foster Freeze. About 10 or 15 minutes later, and within the time they were told the buy was to occur, the appellant was observed walking into the Foster Freeze. He then proceeded toward a gas station where he was overtaken; Lieutenant Cross stepped from the car and told the appellant

that he was under arrest. A search of Dickerson turned up three plastic bags containing marijuana.

## 1. THERE WAS NOT A DENIAL OF DUE PROCESS.

It is argued by the appellant that the piecemeal production of the requested reports, the absence of some of them, and the destruction of original notes by officers after using them to prepare their official reports, precluded a fair trial and resulted in a denial of due process of law.

The appellant contends that he did not receive the police notes on anyone but himself. He admitted that the district attorney had supplied him with everything he had, but that he was not too sure about the notes of the investigating officers. The district attorney replied that he did not know what original notes made by them had been retained by these officers, but that anything written that was in their possession would be supplied to the appellant's counsel.

Dickerson complains that the police reports on Garner, Carpenter, Stevens, Kitchens and Lampkins were not furnished until after they had testified. On the second day of the trial the investigatory notes on those witnesses were given to the appellant. Ambrose testified that he used his notes to write up his official report, and when the report was completed the notes were discarded. At the trial, the appellant reserved the right to cross-examine witnesses after the investigatory notes were received, but he now argues that cross-examination without the aid of investigatory notes was totally ineffective.

It is further argued that justice and fair play dictate that an appellant should be entitled to inspect the original notes of a police officer, and not some edited version contained in an official report, citing *Fahy* v. *State of Connecticut*, 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229] and *Barbee* v. *Warden, Maryland Penitentiary* (4th Cir. 1964) 331 F.2d 842. The *Fahy* case is devoid of any such holding and relates only to improperly seized evidence.

Appellant quotes the *Barbee* opinion as standing for the principle that: "Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution. . . ." In that case the police had withheld information that tended to contradict the evidence introduced by the prosecution. The case makes no mention of any rule that original notes and papers must be preserved.

Appellant also argues that other reports on suspects, many of whom were not witnesses at the trial, were not produced. Certain reports identified by number were claimed by the appellant to have never been produced. It is argued that due process of law was diminished when these reports were not exhibited to the defendant for the possible discovery of any potentially useful evidence on his behalf.

██ There is no question but that under modern procedure a defendant is entitled, after proper application, to secure information in the hands of the prosecuting officials in order to prepare for trial; however, this does not mean that the defense is released from the necessity of a specification of what it wants. If the defense states only in general terms that it wants to see everything in the hands of the district attorney or the police that bears on the case, this all-purpose demand need not be granted. There must be at least a reasonable specificity as to what is required and a plausible justification for the production of relevant writings. (*Ballard* v. *Superior Court*, 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) ██ Here, the record shows that there was no attempt by the prosecution to suppress any evidence, and that the district attorney and the police were willing to give the appellant everything they had pertaining to the defendant and the crimes with which he was charged. Actually, the district attorney gave to the defense the opportunity to see and to copy all writings in his possession, and later additional statements made by high school boys relative to the offense were also given to defendant's counsel even though there was no attempt in the evidence to state the confessions made by the minor witnesses. While, as stated in the case of *People* v. *Cooper*, 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964], "[t]he court properly denied the blanket request that the prosecution turn over to defense counsel all the statements which it had. Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial [citations], he does have to show some better cause for inspection than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime," it appears to us that the defense got everything it was entitled to and perhaps more, and that the complaint on this score is ill founded.

The attack upon the district attorney's actions in this respect is twofold: first, it is claimed, at least inferentially,

that when the additional statements of witnesses were delivered to the defense attorney on the second day of the trial, he was not given ample opportunity to examine and use such statements. This contention is not well founded; our views are more fully expressed in the next section of the opinion; and second, it is also argued that because one witness and perhaps a number of the potential law enforcement witnesses said that, in accordance with their custom. they had destroyed the rough notes which they had made during the investigation after setting forth their substance in the official reports, the appellant was denied a fair trial. To support such a contention the defense must mean that in connection with any investigation of an alleged crime, everybody carrying on such an investigation must preserve rough notes made for the purpose of ensuring accuracy of their official reports and deliver them upon request to defense counsel in order to give possible grounds for cross-examination of such witnesses; no such rule has ever been propounded; it seems to us that it seeks to carry to a ridiculous extreme the enunciation of "rights of accused criminals." We hold that due process was observed in this prosecution.

2. THE DENIALS OF APPELLANT'S MOTIONS FOR A CONTINUANCE WERE WITHIN THE DISCRETIONARY RIGHT OF THE TRIAL COURT.

 After the People concluded its case on the third day of the trial, the appellant requested time in which more adequately to prepare the defense. His counsel argued that he had just recently received the notes that he had sought in spite of the fact that the discovery motion had been granted on November 7. He went on to say that some of the original notes had been destroyed, that he still was not satisfied with what had been produced, and that he had not as yet had an opportunity to see what was missing. Because of this, he requested a continuance in order to formulate a proper defense.

The court denied appellant's motion for a continuance, but did recess the case from late morning until 2 p.m. When the court reconvened, the evidence for the defense was presented.

Appellant's counsel argues that inasmuch as the transcript is replete with requests for the production of the police investigation notes, it is reasonable to believe, in view of the piecemeal delivery thereof, that only a longer continuance would have enabled the appellant to prepare an adequate defense. The dictates of fairness, it is argued, indicate that the trial

court abused its discretion in not allowing a more adequate continuance to permit appellant's attorney to review the reports and investigate the numerous additional persons revealed in the notes as having been involved in the investigation which led to the arrest of the appellant. Respondent points out that, although the latter states that two requests for continuance were denied, it appears from the record that the first was merely a request for a recess, and when the court made an alternate suggestion, appellant did not press his objection or in any way indicate his disapproval. ▮ In determining whether to grant or deny a request for a continuance in the midst of a trial, a court must, of necessity, consider many factors, and it has been firmly established that the granting or refusal of a continuance is within the discretion of the trial judge. (*People* v. *Ketchel,* 59 Cal.2d 503, 546 [30 Cal.Rptr. 538, 381 P.2d 394] ; *People* v. *Hernandez,* 242 Cal. App.2d 351, 355 [51 Cal.Rptr. 385].) If there is no abuse of discretion and no showing of prejudice, the denial of the continuance cannot result in a reversal of a judgment of conviction. (*People* v. *Hernandez, supra; People* v. *Wilson,* 235 Cal.App.2d 266, 273 [45 Cal.Rptr. 267].) ▮ The notes appellant wanted to examine had been given to him the day before his motion for continuance was made. It would seem that counsel had ample opportunity to consult the notes without a long extension of time, and there was no showing by the appellant that he was prejudiced by the action of the court.

3. No Illegally Obtained Evidence Was Admitted at the Trial.

▮ Basing his claim upon the background of the holding of *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855], to the effect that our state and federal governments take the highly ethical position that they do not desire convictions except on fair and legitimate grounds, the appellant urges that the evidence of the student witnesses was obtained through improper means and should not have been used. It is argued that the confessions made by Garner, Carpenter, Stevens, Kitchens, and Lampkins were not voluntary and should not have been admitted at the trial; appellant contends that the confessions were tainted because the arresting officers in each case said that if these schoolboys told the truth it would go easier on them. Where the contention breaks down, however, is the fact that no confession of any of these young people was offered or admitted in evidence.

While it is true that there have been cases in which the evidence of a confession was held not to be proper when the arresting officer said that if the accused were to tell the truth it would go "lighter" on him (see *People* v. *Loper,* 159 Cal. 6 [112 P. 720]; *People* v. *Thompson,* 84 Cal. 598 [24 P. 384]; *People* v. *Barric,* 49 Cal. 342; *People* v. *Johnson,* 41 Cal. 452; *People* v. *Smith,* 15 Cal. 408; *People* v. *Honable,* 229 Cal.App. 2d 480 [40 Cal.Rptr. 414].; *People* v. *Leavitt,* 100 Cal.App. 93 [279 P. 1056]; and *People* v. *Clark,* 55 Cal.App. 42 [203 P. 781]), it has never been ruled that if such a confession is not used in the trial the person who made the confession cannot himself testify. Here, the students who made the confessions were put on the stand and gave their evidence as to what they knew about the case. This point sought to be raised by appellant is inapplicable to the present trial.

4. There Was Probable Cause for the Arrest of the Appellant.

Garner, who had previously made three purchases of marijuana from the defendant, and who had met him shortly before the first of these purchases, had described the man in detail to the officers, had consulted with them concerning his appearance as shown by a photograph, had telephoned to him at the number which he had given, which was checked by the police; afterwards, the defendant came to the place agreed upon by telephone where the sale was to take place; everything led to the conclusion that this man was in the process of committing a felony. The appellant says that the law enforcement officers acted on hearsay. It should be noted that arresting officers are entitled to use hearsay and other factors which might be considered inadmissible evidence at a trial in determining whether probable cause exists for an arrest (*People* v. *Robinson,* 217 Cal.App.2d 433, 437 [31 Cal.Rptr. 723]). Reasonable cause to justify an arrest without a warrant may be established by information obtained from others (*People* v. *Roland,* 183 Cal.App.2d 780, 784 [6 Cal.Rptr. 895]).

Considering the statements made by Garner, it seems quite clear that they were made voluntarily. He was advised of his right to remain silent and that he could have an attorney present, but he said that he did not want an attorney. The statements made implicating others were given within five minutes after his questioning began, and Garner said he made them because he had been in trouble before and thought it might help him if he cooperated. This would indicate that the information given by Garner was given voluntarily.

Probable cause to make an arrest without a warrant has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty. (*People* v. *Roland, supra,* 183 Cal.App.2d 780, 784; *People* v. *Dewson,* 150 Cal.App.2d 119, 127 [310 P.2d 162].) Respondent properly takes the position that appellant's arrest was supported by probable cause.

At the time of appellant's arrest the officers knew that Garner had purchased marijuana from a person known to him as "Dan." They had a physical description of this man, and also a photograph that had been identified by Garner as being "Dan." Garner made the phone call at the request of the police, and said that he wanted three "lids" of marijuana. When the telephone was answered he asked for "Dan," and at the trial said that he recognized the answering voice as belonging to the appellant. The conversation was monitored by Officer Higgins; when the buy was set up he notified Ambrose and his partner that it was to take place at a local Foster Freeze. He told them that the appellant would probably arrive at the site in 10 or 15 minutes, since that was the time it would have taken Garner to get there from his home in Oildale. At the appointed time the appellant was observed by Ambrose making his way across the property of the Foster Freeze. The officers moved in and made the arrest, and a search of the person of the appellant turned up three plastic bags containing marijuana. We conclude that the record contains the account of a state of facts that would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the appellant was at the Foster Freeze for the purpose of concluding the sale of three "lids" of marijuana.

5. THERE WAS NO ENTRAPMENT.

Because Garner, at the request of the law enforcement officers, telephoned to Dickerson and arranged for him to come to the place where he was to sell the marijauna, it is argued that there was entrapment.

Entrapment has been defined as the conception and planning of an offense by a law enforcement officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer. (*People* v. *Turley,* 119 Cal.App.2d 632, 635 [259 P.2d 724]; *People* v. *Lindsey,* 91 Cal.App.2d 914, 916 [205 P.2d 1114].)

■ However, entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the criminal intent to commit the offense originated in the mind of the accused (*People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19]). Here, there can be no question, in view of the evidence of multiple prior sales of marijuana, that Dickerson had long before resolved to sell the forbidden drug to anyone who applied to him for such a sale. ■ Where an accused has a pre-existing criminal intent, the fact that he commits the crime, after solicitation by a decoy, raises no inference of entrapment. (*People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521]; *People* v. *Blocker,* 197 Cal.App.2d 420, 427 [17 Cal.Rptr. 247].)

■ There is ample testimony in the record to indicate that the appellant had made numerous prior sales of marijuana, and that he was holding himself open to make further sales. It has been held that if an officer or a decoy uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment. (*People* v. *Lindsey, supra,* 91 Cal.App.2d 914, 917.) The appellant was ready and willing to make the solicited sale of marijuana; consequently, the defense of entrapment was not established.

■ Entrapment is a positive defense imposing upon an accused the burden of showing that the intent to commit the crime did not originate in his own mind and that he was induced to commit the act for which he is on trial. (*People* v. *Tostado,* 217 Cal.App.2d 713, 719 [32 Cal.Rptr. 178].)

■ This defense must be made originally in the trial court and cannot be raised for the first time on appeal. (*People* v. *Oatis,* 264 Cal.App.2d 324, 327 [70 Cal.Rptr. 524].)

■ The defense of entrapment was not raised specifically, but, if at all, only inferentially at the trial, and, therefore, it would seem doubtful whether it should even be given consideration on appeal. In any event, the record does not establish entrapment.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied April 1, 1969.